## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:09-cv-02786-WJM-BNB

Agile Safety Variable Fund, L.P., and
Sky Bell Select LP,

      Plaintiffs,

v.

RBS Citizens, N.A. d/b/a Charter One Bank and
Swiss Financial Services, Inc.,

      Defendants.

---

## FINAL PRETRIAL ORDER

---

### 1.  DATE AND APPEARANCES

Pretrial Conference Date:  July 26, 2011

*Appearing for Plaintiffs:*

**Steven Thomas**
**Emily Alexander**
**Mark Forrester**
Thomas, Alexander & Forrester LLP
14 27th Avenue
Venice, CA  90291
Telephone:  (310) 961-2542
Facsimile:  (310) 526-6852
Email: StevenThomas@tafattorneys.com

**Steven Feder**
Feder Law Firm
730 17th Street, Suite 550
Denver, CO  80202

Telephone:  (303) 221-5599
Facsimile:  (303) 221-7357
Email:  steve@federlawfirm.com


*Counsel for Defendants:*

1.      RBS Citizens, N.A.:

**Howard Schiffman**
Schulte Roth & Zabel LLP
1152 Fifteenth Street, N.W.
Washington, DC  20005
Telephone:  (202) 729-7470
Facsimile:  (202) 730-4520
Email:  Howard.Schiffman@srz.com

2.      Swiss Financial Services, Inc.:

**Robert B. Christie**
Henderson & Lyman
175 West Jackson Boulevard, Suite 240
Chicago, IL  60604
Telephone:  (312) 986-6957
Facsimile:  (312) 986-6961
Email:  rchristie@henderson-lyman.com

**Holly Stein Sollod**
Holland & Hart
555 17th Street, Suite 3200
Denver, CO  80202
Telephone:  303-295-8085
Facsimile:  303-975-5395
Email:  hsteinsollod@hollandhart.com


## 2.  JURISDICTION

Plaintiffs assert jurisdiction under Title 28 of the United States Code section 1332, based on the
diversity of parties and the alleged amount in question being greater than $75,000.  Defendants do not
dispute diversity.  Defendants do dispute the presence of an injury-in-fact necessary to confer
constitutional standing.

### 3.   CLAIMS AND DEFENSES

**Plaintiffs' Statement:**

I.    **The Parties Involved**

A.    **The Plaintiffs And Their Investors**

Plaintiffs Agile Safety Variable Fund, L.P., ("Agile") and Sky Bell Select LP ("Sky Bell Select") (collectively "Plaintiffs") are investment funds with underlying individual investors.  Beginning in 2003, Plaintiffs invested in Lancelot Investors Fund L.P. and Lancelot Investors Fund II L.P. (collectively "Lancelot") by purchasing limited partnership interests.  Relying on the misrepresentations by Defendants as described below, Plaintiffs invested in Lancelot, maintained their investments in Lancelot, and increased their investments in Lancelot, including reinvesting its returns.  Still further, Sky Bell was formed to invest in Lancelot in reliance on Defendants' misrepresentations.  Agile did due diligence on behalf of Sky Bell and on behalf of Sky Bell's general partner, Sky Bell Asset Management LLC ("SBAM"), and its principal, Gary Marks.  Marks and SBAM were recipients of Defendants' misrepresentations concerning Lancelot and relied on their misrepresentations to form Sky Bell and to continue to invest in Sky Bell.

B.    **Lancelot and Petters**

Lancelot, run by Greg Bell, provided short-term, "purchase order" financing, supplying cash to entities owned and controlled by Thomas J. Petters.  Lancelot purchased promissory notes from Petters, extending short-term loans that Petters allegedly used to purchase inventory.  The proceeds from those sales were supposed to be used by Petters to purchase overstock consumer electronics and then resell the goods to large retailers, such as Costco.  Petters would then repay Lancelot with interest from the proceeds of those purported sales.  The notes were generally 180 days in duration and paid interest of 15% or higher.

By September 2008, Plaintiffs and related entities had invested approximately $65 million in Lancelot and related entities.  However, Lancelot's business was just a scam—there was no excess merchandise and there were no sales to retailers.  The transactions were all fake.  Lancelot's investors, including Plaintiffs, were the victims of a $3.5 billion dollar fraud.

After the FBI executed search warrants on Petters' office and residence and the fraud was revealed, Plaintiffs lost their entire investment of over $23 million in Lancelot and Lancelot declared bankruptcy.  Subsequently, the SEC filed fraud charges against both Petters and Bell.  Petters was convicted on multiple counts of money laundering, wire fraud and mail fraud, among other charges, and is currently serving a 50-year sentence in federal prison.  Bell pled guilty to wire fraud and was sentenced to six years for his role in the fraud.

C.    **The Defendants**

As described below, Charter One, Lancelot's banker, and Swiss Financial, Lancelot's administrator, had

3

longstanding relationships with Lancelot's principal, Gregory Bell. Lancelot established a line of credit with Charter One that was senior to all debt that Lancelot would later incur. As Lancelot's administrator, Swiss Financial maintained Lancelot's books and records and communicated with Lancelot's limited partners such as Plaintiffs. Both Charter One and Swiss Financial worked to recruit Plaintiffs to invest and to continue to invest, and increase their investments, in Lancelot by vouching for the legitimacy and soundness of Lancelot and its arrangement with Petters. Both Charter One and Swiss Financial stood to benefit financially from Lancelot's growth.

## 1.   *Charter One*

Lancelot was Charter One's largest client in Illinois.

### *Charter One's Misrepresentations To Plaintiffs*

Charter One, in an unusual aberration of typical banking or lending practices, solicited Plaintiffs to make new and continued investments in its client, Lancelot. Charter One falsely and directly assured Plaintiffs that the bank had performed extensive, asset-based due diligence on Lancelot. Still further, Charter One assured Plaintiffs of the bank's close relationship with and good character of Lancelot's principal, Greg Bell.

Specifically, Charter One represented to Plaintiffs:

- Bernardo Lacayo of Charter One told Plaintiffs that though the bank did not typically lend to hedge funds, it made an exception for Lancelot because he had "known Greg [Bell] since the days when he was a 10 mm fund" and "looking for senior debt to leverage that 10 mm." Mr. Lacayo maintained that Mr. Bell's character was a reason to have faith in investing in Lancelot.

- Mr. Lacayo told Plaintiffs that Charter One's parent company, Royal Bank of Scotland Group plc ("RBS"), required Charter One to do significant due diligence on Lancelot. He represented that "they did a healthy amount of due diligence" on Lancelot and "kept a very close eye" on the company. Charter One also told Plaintiffs that RBS required the bank to conduct its own "twice a year audit" in which it "checked the notes receivable, the notes, tie[d] it back, books and records" and did "**asset-based**" field exams. Charter One represented that "every time they do a field exam, they outsource with what they consider an expert." Moreover, "at least one of the two exams a year is done by an internal person who has experience working with a finance company." In fact, this was the precise kind of due diligence Charter One's own experts had recommended, but that Charter One's senior executives had rejected.

- Charter One told Plaintiffs that it "audit[s] everything that Lancelot tells us. Every time the field examiners arrive, that's what they're doing. They

do 20-25% actual confirmation, follow the cash flow into the account, and the cash outflow." Bernardo Lacayo described to Plaintiffs the sampling methodology employed by the auditors: "The first time, it was very close to 100%. Then they stayed in the 50's and now they're in the 20's." Lacayo described the strength of the audit team members, explaining that the review was conducted by "the head of our internal audit team, who has a background in lending to finance companies."

- Charter One also assured Plaintiffs that Lancelot had title to a UCC-1 secured interest in the goods and insurance on the goods and the purchaser, underlying the Petters' transaction, even though those protections did not exist.

- Charter One even gave Plaintiffs' due diligence representatives details on the bank's field audit of Lancelot. Charter One represented to Plaintiffs that "they were [at Lancelot offices] a month ago" to conduct the audit. Charter One forwarded the highlights of its field audit to Plaintiffs. Charter One's "internal auditor" claimed to have conducted a review of twelve randomly selected notes totaling $232 million—nearly the entire portfolio. For each note, Charter One claimed to have audited notes, assignment agreements, pledged purchase orders, signed bills of sale from inventory suppliers, purchase orders from Costco, personal guarantees, UCC filings and insurance, which resulted in a "completely clean opinion."

- Charter One offered itself as a continuing resource to Plaintiffs. Charter One told Plaintiffs it considered Lancelot's loan as an ongoing "liquidity line of credit," so it continued to keep a close eye on Lancelot's business. Charter One "gave Plaintiffs the green light" to call Charter One after every one of its audits on Lancelot to verify the soundness of Lancelot's business and financials.

### *The Truth*

Charter One's representations were not true. Charter One did not conduct appropriate due diligence. Charter One did not tie information back to Lancelot's accounts. Charter One's claim that it was doing asset-based due diligence at the behest of its parent, RBS, was knowingly false. And Charter One was rejecting the recommendations of its field examiners.

If Charter One had exercised best banking practices, or done even a fraction of the due diligence on Lancelot it represented it had performed when promoting the investment to Plaintiffs, then Charter One either knew, should have known or was reckless in not knowing that there were material problems with Lancelot's operations. In fact, if Charter One had ever verified the underlying collateral for Lancelot's loans to Petters, which its own employees repeatedly and strongly recommended, the fraud would have

been uncovered and Plaintiffs' losses would have been prevented.

Relying on these endorsements by Lancelot's bank, endorsements that provided unprecedented comfort in Plaintiffs' history of investing, Agile formed Sky Bell to invest in Lancelot and it did so. Agile itself also invested, and continued to invest, in Lancelot.

### 2.   *Swiss Financial*

As Lancelot's administrator, Swiss Financial was responsible for maintaining Lancelot's books and records and tasked with communicating with Lancelot's limited partners. Swiss Financial had online access to all of Lancelot's accounts and purported to examine all of Lancelot's transactions. Swiss Financial claimed to perform reconciliations on Lancelot's books twice per month to check financial records against bank account activity. Swiss Financial also controlled the money flowing in and out of Lancelot's investor accounts, managing the custodial bank account where investors deposited funds. Indeed, Swiss Financial was so in control of Lancelot's books, Lancelot's financial audits took place at Swiss Financial's offices rather than Lancelot's. According to its website, Swiss Financial "draws upon an extensive track record of proficiency, dependability and responsiveness," and strives to "provide competent and timely accounting and administrative," services.

Swiss Financial Services (Bahamas) Ltd. ("SFS Bahamas"), was the administrator of Lancelot Investor Fund, Ltd. ("Lancelot Offshore"), and a majority of Lancelot Offshore's board of directors were employees of SFS Bahamas. SFS Bahamas appointed Swiss Financial to perform the administrator duties for Lancelot Offshore. Swiss Financial thus maintained the books and records of Lancelot Offshore as well.

### *Swiss Financial's Misrepresentations to Plaintiffs*

Swiss Financial also recruited Plaintiffs to make continued and additional investments in Lancelot by falsely and directly assuring Plaintiffs that Swiss Financial had done extensive due diligence on Lancelot and could confirm there was nothing awry with Lancelot's financials—an extraordinary guarantee for an administrator to make to a third party investor. Specifically, Swiss Financial made the following representations to Plaintiffs regarding Lancelot beginning in 2003:

- Joe Barone, Swiss Financial's chief executive officer, represented to Plaintiffs that when Swiss Financial first became Lancelot's administrator and looked at its strategy, "they were a bit shocked with the interest rate on the loans and were skeptical, so they went out and did a lot of homework on the group." This skepticism caused Swiss Financial to perform significantly more due diligence on Lancelot than it typically did on its clients. After getting information from Lancelot's auditors and performing a more in-depth review of Lancelot's documents, Swiss Financial informed Plaintiffs that it had "a much higher level of comfort with the group."

- Swiss Financial told Plaintiffs that its high level of comfort with Lancelot

was based in large part on the "good character" of Greg Bell, Lancelot's principal. Swiss Financial told Plaintiffs that Bell was "very detailed oriented" and "was very cooperative with Swiss Financial after they expressed discomfort with what he's doing." Swiss Financial also told Plaintiffs that Bell was "very morally conscious and reputable."

- Swiss Financial told Plaintiffs that it "knew people who deal with Petters"—Lancelot's sole client and responsible for all of Lancelot's business—and that Swiss Financial had done due diligence on Petters.

- Swiss Financial told Plaintiffs that, as Lancelot's administrator, it verified all the monies flowing through the company. For example, Swiss Financial told Plaintiffs that part of Lancelot's structure included a Northern Trust account, into which all Lancelot monies flowed. "These funds are only permitted to move to two places, either back to investors or to the SPV [special purpose vehicle] to initiate loans, with [Swiss Financial] as the sole authorized signatory on the account. Additionally, the administrator has access to and reviews all transactions processed through the operating account at ABN Amro . . . . All fees, broker compensation, and incentive allocations are verified by the administrator, during its calculations of the monthly NAV of the fund."

- Mr. Barone of Swiss Financial also represented that Lancelot's administrator "is built into the funds' operations and the fund has limited operational capabilities without significant use of the administrator." Swiss Financial represented that it calculated and disbursed all fees and was responsible for NAV calculations.

- Swiss Financial told Plaintiffs that SFS looked at all Lancelot transactions and performed monthly reconciliations. Swiss Financial told Plaintiffs that Swiss Financial tried to do reconciliations twice a month since it originated all loans and distributed the funds. Swiss Financial represented to Plaintiffs that it would "see[] all the loan agreements" and was "overall comfortable with Lancelot because they have transparency into all the bank accounts."

- Swiss Financial made specific representations to Plaintiffs about due diligence regarding fraud detection. Members of Plaintiffs' due diligence team asked whether a bogus agreement could be sent to Swiss Financial and pass through undetected. SFS told Plaintiffs that although "technically" they could not identify it until three months after, SFS would catch it within three months.

- Swiss Financial detailed to Plaintiffs its due diligence on Lancelot. SFS

told Plaintiffs that it "gets a workbook with what the loan docs should be in the middle of the month, and hard copies of the loan docs at the end of the month. SFS . . . checks the bank accounts (the custodial account and the lock-box account which are also held at Charter One) every two weeks and reconcil[es] everything. Everything needs to tie out, one way or another, and it's happened every month. No issues with funny money movement—***they would know it.***"

- Swiss Financial represented directly to Plaintiffs that Swiss Financial got Lancelot's banking information directly from ABN Amro through internet and account statements. If anything was awry, Swiss Financial could ask questions. Up until then, everything was by the book.

### *The Truth*

Swiss Financial knew, had to know, or was reckless in not knowing based on their access to and responsibility for monitoring Lancelot's and Lancelot Offshore's accounts, that the transactions between Lancelot and Petters were illegitimate. Enchanted Family Buying Co. and Nationwide International Resources, both Petters-controlled entities, were cycling money between Lancelot's accounts and Petters accounts. This was money laundering, all purportedly monitored by Swiss Financial.

As stated in Lancelot's offering materials, Swiss Financial was required to calculate the Net Asset Value of Lancelot each month in order to verify what Lancelot's assets were and how much they were worth. GAAP requires Swiss Financial to verify the existence of Lancelot's assets—and Lancelot had no assets. Therefore, these valuations and account statements were false and, in issuing them, SFS acted with intentional misconduct, recklessness or gross negligence. Swiss Financial was supposed to function as a safeguard against fraud. Instead, with access to and authority over Lancelot's bank accounts and internal financial systems, Swiss Financial either knew or negligently failed to detect that all of Lancelot's transactions were fake. Petters-related entities were cycling money through Lancelot accounts held at Charter One, administered and monitored by Swiss Financial.

If Swiss Financial had done its job, it would have discovered that Lancelot was all "funny money." If Swiss Financial had followed standard practices for administrators, it would have discovered the fraud and Plaintiffs would have redeemed all of its investments in Lancelot. Instead, relying on these endorsements by Lancelot's administrator that provided Plaintiffs with extraordinary comfort against the risk of fraud, Sky Bell was formed to invest in Lancelot and did so, and Agile invested and continued to invest in Lancelot.

### II.     **Plaintiffs' Investments In Lancelot In Reliance On Defendants' Misrepresentations**

Each month, Plaintiffs made investment decisions as to whether to invest income earned on investments in Lancelot, or whether to redeem their investments. Based on representations by Charter One and Swiss Financial made directly to Plaintiffs and detailed below, Plaintiffs not only made investments and reinvested the income earned on Lancelot investments, but increased their exposure to Lancelot over

time.

Plaintiffs also invested in Lancelot through Agile's derivative contract with an entity called KBC Financial Services ("KBC").  Whatever amount Plaintiffs had in their derivative account with KBC, a certain percentage was invested in Lancelot.  Therefore, whenever Plaintiffs added money to the derivative account, their investment on Lancelot increased.  Plaintiffs also added money into the derivative account with KBC based on Charter One's and Swiss Financial's misrepresentations.

Gary Marks and SBAM decided to form Sky Bell Select solely to invest in the Lancelot funds based in substantial part on the due diligence representations made by Charter One and Swiss Financial. SBAM's principal, Gary Marks, found the information provided by the Defendants to be an "extraordinary" third-party confirmation.

Based on the foregoing, Charter One and Swiss Financial have committed the torts of negligence and negligent misrepresentation.  Charter One and Swiss Financial have also violated the provisions of Colo. Rev. Stat. § 11-51-501 because, in connection with the offer and sale of Lancelot investments to Plaintiffs, they (a) employed devices, schemes or artifices to defraud Plaintiffs; (b) made untrue statements of material facts and omitted to state material facts necessary; and (c) engaged in acts, practices and courses of business that operated or would operate as a fraud or deceit upon Plaintiffs.

### III.    Plaintiffs' Damages

Plaintiffs seek relief as follows:

    A.    All actual, compensatory and/or consequential damages in the amount to be proven at trial;

    B.    Punitive damages to the fullest extent permitted by law;

    C.    Costs, expert witness fees and pre-and post-judgment interest;

    D.    Any other relief the Court and/or jury deem just, proper and equitable.

### Defendants' Statement:

Defendants do not admit any of the statements or other material included in Plaintiffs' Statement, above, and further object to Plaintiffs' claims and statements that were not included in the Second Amended Complaint and Jury Demand, were not disclosed by Plaintiffs during discovery, or that contradict admissions or other responses or statements that Plaintiffs made during discovery or otherwise, including, for example and without limitation, the statements that Sky Bell Select LP was formed to invest in Lancelot in reliance on Defendants' alleged representations, that Agile acted on behalf of Sky Bell Select, L.P. or Sky Bell Asset Management, and that Plaintiffs invested in Lancelot through a derivative contract with KBC Financial Services.

Defendants assert that they made no false statements regarding Lancelot,[1] and, in any event, that Plaintiffs were sophisticated investors that had no right to rely on gratuitous statements by Defendants, with whom Plaintiffs had no relationship.  Defendants further assert that Plaintiff Agile Safety Variable Fund, L.P. had already made all of its investments in the worthless Lancelot securities prior to the alleged communications with Defendants and that Plaintiff Sky Bell Select LP did not exist at the time of the alleged communications, and neither it nor its promoters or incorporators ever communicated with Defendants, as further explained in Defendants' summary judgment papers.

More specifically (and as further explained in Defendants' summary judgment papers), Defendants assert (a) that each Plaintiff lacks standing because it has no injury-in-fact fairly traceable to Defendants' alleged conduct, (b) that Defendants' alleged conduct was neither the cause-in-fact nor proximate cause of Plaintiffs' losses, (c) that Plaintiffs did not actually, reasonably, and justifiably rely on any representations by Defendants, (d) that Defendants did not make any misrepresentations, (e) that Defendants owed no duty to Plaintiffs, (f) that Defendants did not breach any standard of care, (g) that Defendants neither purchased Lancelot securities from or sold Lancelot securities to Plaintiffs nor conspired with or knowingly provided substantial assistance to anyone who did so purchase or sell, (h) that Plaintiffs' claims are not premised on any offer of securities in Colorado, (i) that Defendants did not act with scienter, (j) that Defendants did not employ a device, scheme, or artifice to defraud or make an untrue statement of material fact or omit to state a material fact necessary in order to make any statements made, in light of the circumstances under which they were made, not misleading, or engage in any act, practice, or course of business that operated or would operate as a fraud or deceit upon Plaintiffs, (k) that Plaintiff Agile Safety Variable Fund, L.P. was not a purchaser or seller of any security, (l) that the alleged fraud against Plaintiff Agile Safety Variable Fund, L.P. was not in connection with the purchase or sale of a security, (m) that Plaintiff Agile Safety Variable Fund, L.P.'s Colorado Securities Act claims are barred by statute of limitations, (n) that Defendants did not provide any information for the guidance of Plaintiff Sky Bell Select LP, (o) that Plaintiffs' losses were caused by, and are the responsibility of, Plaintiffs themselves and their managers, as well as Petters, Petters' accomplices, Lancelot, and Lancelot's managers, which bars or limits Defendants' degree or percentage of liability, if any, (p) that Defendants are not subject to the jurisdiction of this Court, and (q) that Plaintiffs are not entitled to compensatory damages, punitive damages, costs, fees, or any other relief.

## 4.  STIPULATIONS

Stipulated facts:

1.      Lancelot Investors Fund, L.P. and Lancelot Investors Fund II, L.P. (individually and collectively, "Lancelot") were two funds that purported to provide short-term financing to entities owned or controlled by Minnesota businessman Thomas J. Petters (the "Petters Entities").

---

[1]      Hereinafter, "Lancelot" refers to Lancelot Investors Fund L.P. and Lancelot Investors Fund II, L.P. and their general partner Lancelot Investment Management LP (f/k/a Lancelot Investment Management, LLC), and "Swiss Financial" refers to defendant Swiss Financial Services, Inc.

2.  The financing was purportedly used to purchase overstock consumer electronics inventory from suppliers and resell it to large discount retailers such as Costco.

3.  Petters' transactions were fake; there were no consumer electronics and no sales to Costco or other retailers.

4.  Lancelot Investment Management, L.L.C. was the general partner of Lancelot Investors Fund, L.P. and Lancelot Investors Fund II, L.P.

5.  Gregory Bell was the sole managing member of Lancelot Investment Management, L.L.C.

6.  Gregory Bell was the acting manager of Lancelot through September 2008.

7.  In late September 2008, the FBI searched the home of Petters and the offices of entities owned or controlled by him.

8.  On October 20, 2008, Lancelot and its related entities filed for bankruptcy protection under Chapter 7.

9.  On December 1, 2008, Petters was indicted by a federal grand jury, and charged with twenty counts of wire and mail fraud, conspiracy and money laundering. Petters was convicted on December 2, 2009.

10. Bell initially claimed that Lancelot was an innocent victim of the Petters fraud.  However, on July 10, 2009, the SEC announced that it had filed fraud charges against Petters and Bell in the U.S. District Court for the District of Minnesota.

11. On October 7, 2009, Bell pled guilty to one count of wire fraud in the U.S. District Court for the District of Minnesota.  On March 24, 2011, Bell was sentenced to, *inter alia*, five years in prison.

12. Swiss Financial is a corporation formed under the laws of the State of Delaware, licensed to do business in the State of Illinois.

13. Swiss Financial was the administrator to Lancelot Investors Fund, L.P. and Lancelot Investors Fund II, L.P.

14. Swiss Financial served as the administrator of Lancelot Investors Fund, L.P., beginning on November 1, 2002.

15. Swiss Financial served as the administrator of the Lancelot Investors Fund II, L.P., beginning on February 1, 2003.

16. Charter One is a commercial bank subsidiary of Citizen Financial Group, Inc. ("CFG"), which is a bank holding company headquartered in Providence, Rhode Island and indirectly owned by The Royal Bank of Scotland Group, plc.

17.     Plaintiff Agile Safety Variable Fund, L.P. ("Agile") was managed by an entity known as Agile Group, LLC, which was also the general partner of Agile.

18.      Plaintiff Sky Bell Select, L.P. was managed by Sky Bell Asset Management, whose principal was Gary Marks.

The parties intend to continue exploring possible stipulations to include as a jury instruction on stipulated facts.

## 5.  PENDING MOTIONS

None.

## 6.  WITNESSES[2]

a.      <u>Plaintiffs' Nonexpert Witnesses:</u>

(1)     Witnesses who will be present at trial:

**Gary Marks**, 3115 Noho Loihi Way, Kihei, HI 96753.  Mr. Marks will testify as to his work for Sky Bell Asset Management, including due diligence on Lancelot, the investments in Lancelot, the reliance on Defendants' misrepresentations, the formation of Plaintiff Sky Bell Select LP, and the losses Sky Bell suffered.  The purpose of his testimony will be to show that Sky Bell Select was formed in reliance on statements by the Defendants to invest exclusively in Lancelot, and that Plaintiff Agile performed due diligence on Lancelot on Sky Bell's behalf, and that Sky Bell suffered losses caused by Defendants.

**Chad Leavitt**, Chief Financial Officer, Quantitative Equity Strategies, LLC, 8822 Ridgeline Boulevard, Suite 220, Highlands Ranch, CO 80129, (303) 471-0244.  Mr. Leavitt will testify as to his investments and as to his work as the co- manager for The Agile Group, LLC. The purpose of his testimony will be to explain the facts of the case that support Plaintiffs' claims, the losses Plaintiffs suffered, and to authenticate Plaintiffs' documents.

**John Neal**, 2150 Country Club Pkwy, Milliken, CO 80543, (303) 440-6500.  Mr. Neal will testify as to his investments and as to his work as the co-manager for The Agile Group, LLC.   The purpose of his testimony will be to explain the facts of the case that support Plaintiffs' claims, the losses Plaintiffs' suffered, and to authenticate Plaintiffs' documents.

(2)     Witnesses who may be present at trial if the need arises:

---

[2]     Each side reserves the right to object to the appearance of the other side's designated witnesses on any grounds other than the failure to include such witnesses in this Pretrial Order.

**Jack Bamberg**, c/o Thomas, Alexander & Forrester LLP, 14 27th Avenue, Venice, CA 90291, (310) 961-2536.  Mr. Bamberg will testify as to his losses as an investor in Agile.  The purposes of such testimony will be to demonstrate the harm that was suffered as a result of Defendants' misrepresentations.

**Ray Bovet**, c/o Thomas, Alexander & Forrester LLP, 14 27th Avenue, Venice, CA 90291, (310) 961-2536.  Mr. Bovet will testify as to his losses as an investor in Agile.  The purposes of such testimony will be to demonstrate the harm that was suffered as a result of Defendants' misrepresentations.

**Donald Collins**, c/o Thomas, Alexander & Forrester LLP, 14 27th Avenue, Venice, CA 90291, (310) 961-2536.  Mr. Collins will testify as to his losses as an investor in Agile.  The purposes of such testimony will be to demonstrate the harm that was suffered as a result of Defendants' misrepresentations.

**Melba Cutter,** c/o Thomas, Alexander & Forrester LLP, 14 27th Avenue, Venice, CA 90291, (310) 961-2536.  Ms. Cutter will testify as to her losses as an investor in Agile.  The purposes of such testimony will be to demonstrate the harm that was suffered as a result of Defendants' misrepresentations.

**Eric Fonacier**, 1313 East 17th Avenue; Denver, CO 80218, (303) 882-2933.  Mr. Fonacier will testify as to the due diligence on investments for Agile Safety Variable Fund L.P. and Sky Bell, including communications with Defendants  The purposes of such testimony will be to provide facts that support Plaintiffs' claims, including the misrepresentations of Defendants.

**Charlotte Gates**, c/o Thomas, Alexander & Forrester LLP, 14 27th Avenue, Venice, CA 90291, (310) 961-2536.  Ms. Gates will testify as to her losses as an investor in Agile.  The purposes of such testimony will be to demonstrate the harm that was suffered as a result of Defendants' misrepresentations.

**Geoff Gotsch**, 450 Knights Run Avenue, Apt 1906, Tampa, FL 33602, (813) 792-5554.  Mr. Gotsch will testify as to his work for Sky Bell Asset Management, including due diligence on Lancelot, and  the formation of Plaintiff Sky Bell Select LP.  The purpose of his testimony will be explain the facts, explain the documents, and to explain Sky Bell's investments.

**Neal Greenberg**, 14 Rue Claude Vivier, Verdun, Quebec, Canada.  Mr. Greenberg will testify as to the investments in Lancelot made by Agile, the due diligence that was performed, the reliance by Agile on Defendants, and the losses suffered by Agile.  The purpose of Mr. Greenberg's testimony is to explain the facts and documents concerning Agile's investments, due diligence, reliance on Defendants, and Agile's losses caused by Defendants.

**Joseph Ingalsbe**, 1070 Race Street, Unit E, Denver, CO 80206.  Mr. Ingalsbe will testify as to his work as a due diligence analyst for Plaintiff Agile.   The purpose of his testimony will be to explain the facts concerning due diligence and to explain Plaintiffs' documents.

**Peter Levitan**, c/o Thomas, Alexander & Forrester LLP, 14 27th Avenue, Venice, CA 90291, (310)

961-2536.  Mr. Levitan will testify as to his losses as an investor in Agile.  The purposes of such testimony will be to demonstrate the harm that was suffered as a result of Defendants' misrepresentations.

**Almina Ringdahl**, c/o Thomas, Alexander & Forrester LLP, 14 27th Avenue, Venice, CA 90291, (310) 961-2536.  Ms. Ringdahl will testify as to her losses as an investor in Agile.  The purposes of such testimony will be to demonstrate the harm that was suffered as a result of Defendants' misrepresentations.

**Suzanne Webel**, c/o Thomas, Alexander & Forrester LLP, 14 27th Avenue, Venice, CA 90291, (310) 961-2536.  Ms. Webel will testify as to his losses as an investor in Agile.  The purposes of such testimony will be to demonstrate the harm that was suffered as a result of Defendants' misrepresentations.

(3)    Witnesses where testimony is expected to be presented by means of a deposition:

**Joseph Barone**, Swiss Financial Services, Inc., 280 Shuman Boulevard, Suite 190, Naperville, Illinois 60563, (630) 355-2100.  Mr. Barone will  testify as to (a) Swiss Financial's obligations and performance as Lancelot's administrator, including its responsibility for Lancelot's financial records and for communicating with investors;  (b) his communications with Plaintiffs regarding Lancelot; (c) the circumstances surrounding Swiss Financial Services' employees control of the Lancelot Offshore board.  The purpose of this testimony is to determine (i) whether Swiss Financial's performed its administrative duties regarding Lancelot, including the duty to safeguard against fraud, under professional standards and (ii) whether Swiss Financial misrepresented the scope and accuracy of its work, including its due diligence, to Plaintiffs, in addition to other matters addressed in Mr. Barone's deposition.

**Karl Benzinger**, Swiss Financial Services, Inc., 280 Shuman Boulevard, Suite 190, Naperville, Illinois 60563, (630) 355-2100.  Mr. Benzinger will testify as to (a) Swiss Financial's obligations and performance as Lancelot's administrator, including its responsibility for Lancelot's financial records and for communicating with investors; and (b) his communications with Plaintiffs regarding Lancelot.  The purpose of this testimony is to determine (i) whether Swiss Financial's performed its administrative duties regarding Lancelot, including the duty to safeguard against fraud, under professional standards and (ii) whether Swiss Financial misrepresented the scope and accuracy of its work, including its due diligence, to Plaintiffs, in addition to other matters addressed in Mr. Benzinger's deposition.

**Liam Brickley,** 3025 Chemical Road, 194-0300, Plymouth Meeting, PA 19462, (610) 941-8401.  Mr. Brickley will testify as to (a) his role as a senior credit officer in Charter One's commercial markets business; (b) the process at Charter One for approving a loan; (c) the process of Lancelot obtaining a loan.  The purpose of this testimony is to determine the process through which Charter One approved its loans to Lancelot, in addition to other matters addressed in Mr. Brickley's deposition.

**Brenda Czekaj**, 525 William Penn Place, Pittsburgh, PA 15219, (412) 867-2707.  Ms. Czekaj will testify as to (a) the purpose of Charter One's field examinations on borrowers generally; (b) the work done on field examinations of Lancelot; and (3) what recommendations were made to Charter One

officers as a result of Lancelot field exams; (4) what recommendations were rejected by Charter One senior officers and why. The purposes of Ms. Czekaj's testimony will be to determine that Charter One rejected recommendations by its own internal field examiners to require shipping documents to prove the existence of the underlying collateral for Lancelot's loans to its only client, Tom Petters, in addition to other matters addressed in Ms. Czekaj's deposition.

**Mark Hennigar,** TD Bank, 5 Commerce Park North, Bedford, NH 03110, (603) 222-9587. Mr. Hennigar will testify as to (a) his role as a senior credit officer at Charter One; (b) the process at Charter One for approving a loan; (c) the process of Lancelot obtaining a loan. The purpose of this testimony is to determine the process through which Charter One approved its loans to Lancelot, in addition to other matters addressed in Mr. Hennigar's deposition.

**Bernard Lacayo,** 120 South LaSalle Street, Chicago, IL 60603, (312) 564-2159. Mr. Lacayo will testify as to (a) Charter One's work with its client Lancelot, including what Charter One did, whether it properly performed its duties, and its representations and misrepresentations to Plaintiffs; (b) the process of securing Lancelot's banking business over Lancelot's former bank, Banco Popular; (c) due diligence performed by the bank on Lancelot, including field exams, and the results of that due diligence; The purpose of such testimony is to determine (i) Charter One properly performed its obligations and made misrepresentations to Plaintiffs., in addition to other matters addressed in Mr. Lacayo's deposition.

**Teresa McCoyd,** 1547 N. Hudson Avenue, Unit 4, Chicago, IL 60610. Ms. McCoyd will testify as to (a) Charter One's work with its client Lancelot, including what Charter One did, whether it properly performed its duties, and its representations and misrepresentations to Plaintiffs; (b) the process of securing Lancelot's banking business over Lancelot's former bank, Banco Popular; (c) due diligence performed by the bank on Lancelot, including field exams, and the results of that due diligence; The purpose of such testimony is to determine (i) Charter One properly performed its obligations and made misrepresentations to Plaintiffs, in addition to other matters addressed in Ms. McCoyd's deposition.

**Ronald R. Peterson**, c/o Elizabeth Coleman, Jenner & Block LLP, 353 N. Clark Street, Chicago, IL 60654, (312) 923-2659. Mr. Peterson, the Lancelot Investors Fund L.P. Chapter 7 trustee, will testify as to the Lancelot bankruptcy proceeding and related documents. The purpose of such testimony is to describe the Lancelot bankruptcy proceeding and related documents.

**Brian Squires,** 875 Elm Street, ELM6-1, Manchester, NH 03101, (603) 634-7313. Mr. Squires will testify as to (a) the purpose of Charter One's field examinations on borrowers generally; (b) the work done on field examinations of Lancelot; and (3) what recommendations were made to Charter One officers as a result of Lancelot field exams; (4) what recommendations were rejected by Charter One senior officers and why. The purposes of Ms. Squires' testimony will be to determine that Charter One rejected recommendations by its own internal field examiners to require shipping documents to prove the existence of the underlying collateral for Lancelot's loans in addition to other matters addressed in Mr. Squires' deposition.

**John Straka**, 5960 Rockport Lane, Fairview Park, Ohio, 44126. Mr. Straka will testify as to (a) his work in the credit approval process at Charter One; (b) the general process for Charter One to approve a loan, including when Charter One's parent company required approval; and (c) his knowledge of the

credit approval process performed by Charter One with respect to its loans to Lancelot.  The purpose of such testimony is to determine if Charter One properly did its job concerning the credit approval process, in addition to other matters addressed in Mr. Straka's deposition..

**Scott Swanson**, 71 South Wacker, Chicago, IL 60606.  Mr. Swanson will testify as to (a) Charter One's relationship with Lancelot and the performance of its obligations; (b) the loan approval process at Charter One, in addition to other matters addressed in Mr. Swanson's deposition.  The purpose of such testimony is to determine whether Charter One did its job, in addition to other matters addressed in Mr. Swanson's deposition.

    b.    <u>Defendants' Nonexpert Witnesses:</u>

        (1)    Witnesses who will be present at trial:

        (2)    Witnesses who may be present at trial if the need arises:

**Joseph Barone** (Swiss Financial Services, Inc., 280 Shuman Boulevard, Suite 190, Naperville, Illinois 60563, (630) 355-2100 ) to testify on Swiss Financial's obligations and performance under its contracts with Lancelot, the nature, purpose, and limitation of its obligations to Lancelot under the Lancelot's offering memorandum, its limited access to financial information not held under Lancelot's name, and its reliance on Lancelot's certified audits in the performance of its contractual duties, in additional to other sundry matters addressed in Mr. Barone's deposition.

**Karl Benzinger** (Swiss Financial Services, Inc., 280 Shuman Boulevard, Suite 190, Naperville, Illinois 60563, (630) 355-2100)  to testify on Swiss Financial's obligations and performance under its contracts with Lancelot, the nature, purpose, and limitation of its obligations to Lancelot under Lancelot's offering memorandum, its limited access to financial information not held under Lancelot's name, and its reliance on Lancelot's certified audits in the performance of its contractual duties, in additional to other sundry matters addressed in Mr. Benzinger's deposition.

**Eric Fonacier** (1313 East 17th Avenue; Denver, CO 80218) to testify if the need arises as to (i) his asserted communications with Defendants' Bernardo Lacayo and Joseph Barone, (ii) his work performing due diligence for or on behalf of Agile Safety Variable Fund, L.P. or its managers, (iii) the investments of Agile Safety Variable Fund, L.P. and commonly managed entities, and (iv) the extent, if any, to which he was a promoter or incorporator of Plaintiff Sky Bell Select LP.  The purposes of such testimony will be to determine whether Defendants made false statements to Plaintiffs, whether Plaintiffs reasonably and justifiably relied on any such statements, whether any such statements were material to Plaintiffs' investment decisions, and the parties' and nonparties relative degrees of fault, if any, in addition to other matters addressed in Mr. Fonacier's deposition.

**Joseph Ingalsbe** (1070 Race Street, Unit E,  Denver, CO 80206) to testify if the need arises as to (i) his work for or on behalf of Agile Safety Variable Fund, L.P. or its managers, including work performing

due diligence, and (ii) the investments of Agile Safety Variable Fund, L.P. and commonly managed entities. The purposes of such testimony will be to determine whether Plaintiffs reasonably and justifiably relied on any statements by Defendants, whether any such statements were material to Plaintiffs' investment decisions, and the parties' and nonparties relative degrees of fault, if any, in addition to other matters addressed in Mr. Ingalsbe's deposition.

**Brenda Czekaj** (525 William Penn Place, Pittsburgh, PA 15219, (412) 867-2707) to testify if the need arises as to the nature and purpose of RBS Citizens, N.A.'s field examinations and related reports of borrowers, including Lancelot. The purposes of such testimony will be to rebut Plaintiffs' allegations regarding such field examinations and reports, in addition to other matters addressed in Ms. Czekaj's deposition.

**Gary Marks** (3115 Noho Loihi Way, Kihei, HI 96753) to testify if the need arises as to (i) the formation of Plaintiff Sky Bell Select LP, (ii) the investments of Sky Bell Select LP and commonly managed entities, and (iii) the due diligence in connection with such investments. The purposes of such testimony will be to determine whether Defendants made materially false statements to Plaintiff Sky Bell Select LP, whether Plaintiff Sky Bell Select LP reasonably and justifiably relied on any such statements, whether any such statements were material to Plaintiffs' investment decisions, and the parties' and nonparties relative degrees of fault, if any, in addition to other matters addressed in Mr. Marks' deposition.

**Liam Brickley** (3025 Chemical Road, 194-0300, Plymouth Meeting, PA 19462-1739, (610) 941-8401) to testify if the need arises as to the approval and performance of loans from RBS Citizens, N.A. to Lancelot. The purpose of such testimony will be to rebut Plaintiffs' allegations regarding Charter One's lending practices, in addition to other matters addressed in Mr. Brickley's deposition.

**Brian Squires** (875 Elm Street, ELM 6-1, Manchester, NH 03101, (603) 634-7313) to testify if the need arises as to the nature and purpose of RBS Citizens, N.A.'s field examinations and related reports of borrowers, including Lancelot. The purposes of such testimony will be to rebut Plaintiffs' allegations regarding such field examinations and reports, in addition to other matters addressed in Mr. Squires' deposition.

**Scott Swanson** (71 S. Wacker Drive, 29th Floor, Chicago, IL 60606) to testify if the need arises as to (i) RBS Citizens, N.A.'s banking relationship with Lancelot, L.P. or (ii) the approval and performance of loans from RBS Citizens, N.A. to Lancelot. The purposes of such testimony will be to rebut Plaintiffs' allegations regarding Charter One's lending practices and to determine (a) the nature and extent of RBS Citizens, N.A.'s knowledge of Lancelot's and Petters' operations, and (b) the nature and extent of RBS Citizens, N.A.'s responsibilities and due diligence with respect to Lancelot's accounts, in addition to other matters addressed in Mr. Swanson's deposition.

**Chadwick T. Leavitt** (1020 15th St. 11H, Denver, CO 80202) to testify if the need arises as to (i) his work for or on behalf of Agile Safety Variable Fund, L.P. or its managers, including work performing due diligence, and (ii) the investments of Agile Safety Variable Fund, L.P. and commonly managed entities. The purposes of such testimony will be to determine whether Plaintiffs reasonably and justifiably relied on any statements by Defendants, whether any such statements were material to

Plaintiffs' investment decisions, and the parties' and nonparties relative degrees of fault, if any.

(3)     Witnesses where testimony is expected to be presented by means of a deposition:

**Christopher Cutler** (200 East 89th Street, apartment 44N, New York, NY 10128) to testify if the need arises as to as to (i) his work for or on behalf of Agile Safety Variable Fund, L.P. or its managers, including work performing due diligence, and (ii) the investments of Agile Safety Variable Fund, L.P. and commonly managed entities. The purposes of such testimony will be to determine whether Plaintiffs reasonably and justifiably relied on any statements by Defendants, whether any such statements were material to Plaintiffs' investment decisions, and the parties' and nonparties relative degrees of fault, if any, in addition to other matters addressed in Mr. Cutler's deposition.

**Geoffrey Gotsch** (450 Knights Run Avenue, Apt 1906, Tampa, FL 33602) to testify if the need arises as to (i) his work for or on behalf of Sky Bell Asset Management LP or its managers, (ii) the formation of Plaintiff Sky Bell Select LP, (iii) the investments of Sky Bell Select LP and commonly managed entities, and (iv) the due diligence in connection with such investments. The purposes of such testimony will be to determine whether Defendants made materially false statements to Plaintiff Sky Bell Select LP, whether Plaintiff Sky Bell Select LP reasonably and justifiably relied on any such statements, whether any such statements were material to Plaintiffs' investment decisions, and the parties' and nonparties relative degrees of fault, if any, in addition to other matters addressed in Mr. Gotsch's deposition.

**Neal Greenberg** (14 Rue Claude Vivier, Verdun, Quebec, Canada) to testify if the need arises as to (i) his work for or on behalf of Agile Safety Variable Fund, L.P. or its managers, including work performing due diligence, and (ii) the investments of Agile Safety Variable Fund, L.P. and commonly managed entities. The purposes of such testimony will be to determine whether Plaintiffs reasonably and justifiably relied on any statements by Defendants, whether any such statements were material to Plaintiffs' investment decisions, and the parties' and nonparties relative degrees of fault, if any, in addition to other matters addressed in Mr. Greenberg's deposition.

**Michael Sell** (405 Adelphi Street, Unit 1, Brooklyn, NY 11238) to testify if the need arises as to (i) his work for or on behalf of Sky Bell Asset Management LP or its managers, (ii) the formation of Plaintiff Sky Bell Select LP, (iii) the investments of Sky Bell Select LP and commonly managed entities, and (iv) the due diligence in connection with such investments. The purposes of such testimony will be to determine whether Defendants made materially false statements to Plaintiff Sky Bell Select LP, whether Plaintiff Sky Bell Select LP reasonably and justifiably relied on any such statements, whether any such statements were material to Plaintiffs' investment decisions, and the parties' and nonparties relative degrees of fault, if any, in addition to other matters addressed in Mr. Sell's deposition.

**Bernardo Lacayo** (120 South LaSalle Street, Chicago, IL 60603, (312) 564-2159) to testify if the need arises as to (i) RBS Citizens, N.A.'s banking relationship with Lancelot, and (ii) Lacayo's communications with Lancelot's investors. The purposes of such testimony will be to determine (a) whether Defendants made materially false statements to Plaintiffs, (b) the nature and extent of RBS Citizens, N.A.'s knowledge of Lancelot's and Petters' operations, (c) the nature and extent of RBS Citizens, N.A.'s responsibilities and due diligence with respect to Lancelot's accounts, and (d) the

temporal period of RBS Citizens, N.A.'s relationship with Lancelot, in addition to other matters addressed in Mr. Lacayo's deposition.

**Teresa McCoyd** (1547 North Hudson Avenue, Unit 4, Chicago, IL, 60610, (312) 587-3097) to testify if the need arises as to (i) RBS Citizens, N.A.'s banking relationship with Lancelot. The purposes of such testimony will be to determine (a) the nature and extent of RBS Citizens, N.A.'s knowledge of Lancelot's and Petters' operations, (b) the nature and extent of RBS Citizens, N.A.'s responsibilities and due diligence with respect to Lancelot's accounts, and (c) the temporal period of RBS Citizens, N.A.'s relationship with Lancelot, in addition to other matters addressed in Ms. McCoyd's deposition.

**John Straka** (5960 Rockport Lane, Fairview Park, OH, 44126, (216) 515-6761) to testify if the need arises as to the approval and performance of loans from RBS Citizens, N.A. to Lancelot. The purpose of such testimony will be to rebut Plaintiffs' allegations regarding Charter One's lending practices, in addition to other matters addressed in Mr. Straka's deposition.

**Mark Hennigar** (TD Bank, 5 Commerce Park North, Bedford, NH  03110, (603) 222-9587) to testify if the need arises as to the approval and performance of loans from RBS Citizens, N.A. to Lancelot. The purpose of such testimony will be to rebut Plaintiffs' allegations regarding Charter One's lending practices, in addition to other matters addressed in Mr. Hennigar's deposition.

**Thomas Joseph Petters** (USP Leavenworth, P.O. Box 1000, Leavenworth, KS  66048, 913-682-8700) to testify if the need arises as to the timing, nature, and scope of the Petters scheme. The purposes of such testimony will be to establish the value of Lancelot at various times and to identify nonparties at fault.

**Deanna L. Coleman** (Community Corrections Office, 300 South 4th St, Suite 1210, Minneapolis, MN 55415, 612-664-5560) to testify if the need arises as to the timing, nature, and scope of the Petters scheme. The purposes of such testimony will be to establish the value of Lancelot at various times and to identify nonparties at fault.

**Robert D. White** (FPC Yankton, P.O. Box 700, Yankton, SD  57078, 605-665-3262) to testify if the need arises as to the timing, nature, and scope of the Petters scheme. The purposes of such testimony will be to establish the value of Lancelot at various times and to identify nonparties at fault.

**Michael Catain** (FPC Duluth, P.O. Box 1000, Duluth, MN  55814, 218-722-8634) to testify if the need arises as to the timing, nature, and scope of the Petters scheme. The purposes of such testimony will be to establish the value of Lancelot at various times and to identify nonparties at fault.

**Larry Reynolds** (FCI Beaumont Low, P.O. Box 26020, Beaumont, TX  77720, 409-727-8172) to testify if the need arises as to the timing, nature, and scope of the Petters scheme. The purposes of such testimony will be to establish the value of Lancelot at various times and to identify nonparties at fault.

**Gregory Malcolm Bell** (FPC Duluth, P.O. Box 1000, Duluth, MN  55814, 218-722-8634) to testify if the need arises as to (i) the timing, nature, and scope of the Petters scheme, (ii) the finances of Lancelot, and (iii) the timing, nature, and scope of Lancelot's communications and relationship with each of the

parties and Plaintiffs' managers.  The purposes of such testimony will be to establish the value of Lancelot at various times, to identify nonparties at fault, and to determine the parties' and nonparties' relative degrees of fault, if any.

**Harold A. Katz** (FCI Fort Dix, P.O. Box 2000, Fort Dix, NJ  08640, 609-723-1100) to testify if the need arises as to (i) the timing, nature, and scope of the Petters scheme, (ii) the finances of Lancelot, and (iii) the timing, nature, and scope of Lancelot's communications and relationship with each of the parties and Plaintiffs' managers.  The purposes of such testimony will be to establish the value of Lancelot at various times, to identify nonparties at fault, and to determine the parties' and nonparties' relative degrees of fault, if any.

**Yuri Ackerman** (300 W Grand Ave., Apt 506, Chicago, IL 60654-7878, (312) 664-3027) to testify if the need arises as to (i) the timing, nature, and scope of the Petters scheme, (ii) the finances of Lancelot, and (iii) the timing, nature, and scope of Lancelot's communications and relationship with each of the parties and Plaintiffs' managers.  The purposes of such testimony will be to establish the value of Lancelot at various times, to identify nonparties at fault, and to determine the parties' and nonparties' relative degrees of fault, if any.

**Simon Lesser** (McGladrey & Pullen LLP, 3600 American Boulevard, Bloomington, MN) to testify if the need arises as to (i) the finances of Lancelot, and (ii) the role of Lancelot's auditors.  The purposes of such testimony will be to establish the value of Lancelot at various times, to identify nonparties at fault, and to determine the parties' and nonparties' relative degrees of fault, if any.

**Bruce Prevost** (8292 Nashua Dr., Palm Beach Gardens, FL  33418-6046, (561) 624-2003) to testify if the need arises as to the timing, nature, and scope of the Petters scheme and the investments and due diligence of Plaintiffs and their commonly managed entities in hedge funds with exposure to Petters. The purposes of such testimony will be to establish the value of Lancelot at various times, to identify nonparties at fault, and to determine the parties' and nonparties' relative degrees of fault, if any.

**David Harrold** (963 Evergreen Dr., Del Ray Beach, FL  33483-4802, (561) 278-3002) to testify if the need arises as to the timing, nature, and scope of the Petters scheme and the investments and due diligence of Plaintiffs and their commonly managed entities in hedge funds with exposure to Petters. The purposes of such testimony will be to establish the value of Lancelot at various times, to identify nonparties at fault, and to determine the parties' and nonparties' relative degrees of fault, if any.

c.      Plaintiffs' Expert Witnesses

(1)      Witnesses who will be present at trial:

**Richard McIntosh**, McIntosh & Associates LLC, 114 Lindy Lane, Lincroft, NJ 07738, (732) 224-0001. The nature and purpose of Mr. McIntosh's testimony will be to demonstrate that Charter One was reckless, grossly negligent and caused the losses Plaintiffs suffered through their investment in Lancelot. Mr. McIntosh will testify but for Charter One's intentional, reckless  and grossly negligent misrepresentations regarding the bank's due diligence of Lancelot, Plaintiffs would not have initiated

and maintained investments in Lancelot and Plaintiff Sky Bell would not have formed Sky Bell Offshore, a new fund created specifically to invest in Lancelot.  He will testify that if Charter One had followed standard banking practices and exercised due care, it had or should have knowledge that Lancelot was participating in a massive fraud.  Mr. McIntosh will testify in person.

**Glen Payne**, Jones & Keller, 1999 Broadway, Suite 3150, Denver, CO 80212, (303) 881-8720.  The nature and purpose of Mr. Payne's testimony will be to demonstrate that Swiss Financial was reckless, grossly negligent and caused the losses Plaintiffs suffered through their investment in Lancelot.  Mr. Payne will testify that but for Swiss Financial's fraudulent, reckless and grossly negligent actions in maintaining Lancelot's books, controlling Lancelot Offshore's board of directors, and misrepresenting the validity of Lancelot's transactions, Plaintiffs would not have initiated and maintained investments in Lancelot and Plaintiff Sky Bell would not have formed Sky Bell Offshore, a new fund created specifically to invest in Lancelot.  Mr. Payne will testify in person.

    (2)  Witnesses who may be present at trial:

None.

    (3)  Witnesses where testimony is expected to be presented by means of a deposition:

None.

  d.  <u>Defendants' Expert Witnesses:</u>

    (1)  Defendants' witnesses who will be present at trial:

    (2)  Witnesses who may be present at trial:

**Thomas Pearson** (1440 N. Lake Shore Dr., Chicago, IL 60610, (312) 543-7713) to testify as to whether Swiss Financial properly discharged its administrative duties to Lancelot in conformance with the custom and practice of hedge fund administrators, whether Swiss Financial satisfied GAAP standards in valuing notes issued by SPVs to Lancelot, whether Swiss Financial was required under GAAP stands to inspect the collateral securing the promissory notes issued by SPVs to Lancelot, and to rebut the testimony of Plaintiffs' expert Glen Payne.

**Ezra Zask** (SFC Associates LLC, 1230 Avenue of the Americas, New York, NY  10022, (212) 618-6315) to testify as to the customs and practices of portfolio managers, including hedge fund managers, particularly concerning the customs and practices in the industry with respect to the information upon which such managers rely when making investment decisions.  The purposes of such testimony will be to show that the purported reliance by Plaintiffs and their managers upon any asserted communications with Charter One was not reasonable and justifiable.

**Charles Kenny** (330 St. Katherine Dr., La Canada, CA 91011, (818) 790-7433) to testify as to whether RBS Citizens, N.A.'s actions were in conformance with banking industry custom and practice in connection with its loans to Lancelot.  The purpose of such testimony will be to rebut the testimony of Plaintiffs' expert Richard T. McIntosh on that topic and to show that RBS Citizens, N.A.'s actions did not breach any applicable standard of care.

> (3)    Witnesses where testimony is expected to be presented by means of a deposition:

None.

## 7.  EXHIBITS

a.    Exhibits offered by each party:

> 1.    Plaintiffs: The list of exhibits to be offered by Plaintiffs is appended at Tab A.

> 2.    Defendants: The list of exhibits to be offered by Defendants is appended at Tab B.

b.    Copies of listed exhibits must be provided to opposing counsel and any pro se party no later than 30 days before trial.  The objections contemplated by Fed. R. Civ. P. 26(a)(3) shall be filed with the clerk and served by hand delivery or facsimile no later than 14 days after the exhibits are provided.

## 8.  DISCOVERY

Discovery has been completed, except that Defendants claim that Plaintiffs have not yet completed their production of documents required by the Order dated November 4, 2010 that granted in part and denied in part Defendant RBS Citizens, N.A.'s Motion to Compel Requested Discovery from Plaintiffs and Certain Affiliated Third Parties (Docket No. 119).

## 9.  SPECIAL ISSUES

None.

## 10. SETTLEMENT

a.    Counsel for Plaintiffs (Mark Forrester) and RBS Citizens, N.A. (Howard Schiffman and Eric Bensky) met by telephone on April 21, 2011 to discuss in good faith the settlement of the case. Counsel and party representatives for Plaintiffs (Steven Thomas and Emily Alexander) and RBS

Citizens, N.A. (Eric Bensky, Kenneth L. Urwiller II, and Ilah Adkins) met again by telephone on July 18, 2011 to discuss in good faith the settlement of the case.  Counsel for Plaintiffs (Steven Thomas and Emily Alexander) and Swiss Financial Services, Inc. (Robert Christie) met by telephone on July 18, 2011 to discuss in good faith the settlement of the case.

b.      The participants in the April 21, 2011 settlement conference included Mark Forrester, Howard Schiffman, and Eric Bensky.  The participants in the July 18, 2011 settlement conference included Steven Thomas, Emily Alexander, Eric Bensky, Kenneth L. Urwiller II, Ilah Adkins, and Robert Christie.

c.      The parties were promptly informed of all offers of settlement.

d.      Counsel for the parties do not intend to hold future settlement conferences.

e.      It appears from the discussion by all counsel and any pro se party that there is no possibility of settlement.

f.      There are no additional settlement conferences scheduled.

g.      Counsel for the parties and any pro se party considered ADR in accordance with D.C. COLO. L. Civ. R.16.6.

## 11. OFFER OF JUDGMENT

Counsel and any pro se party acknowledge familiarity with the provision of rule 68 (Offer of Judgment) of the Federal Rules of Civil Procedure.  Counsel have discussed it with the clients against whom claims are made in this case.

## 12. EFFECT OF FINAL PRETRIAL ORDER

Hereafter, this Final Pretrial Order will control the subsequent course of this action and the trial, and may not be amended except by consent of the parties and approval by the court or by order of the court to prevent manifest injustice.  The pleadings will be deemed merged herein.  This Final Pretrial Order supersedes the Scheduling Order.  In the event of ambiguity in any provision of this Final Pretrial Order, reference may be made to the record of the pretrial conference to the extent reported by stenographic notes and to the pleadings.

## 13. TRIAL AND ESTIMATED TRIAL TIME; FURTHER TRIAL PREPARATION PROCEEDINGS

1.      The trial is to a jury.

2.      The estimated trial time is 5 (Defendants' estimate) to 8 days (Plaintiffs' estimate).

3.      The trial will be before the Honorable William R. Martinez, the United States District Court for the District of Colorado.

DATED this 19th day of July, 2011.

BY THE COURT:

_____
United States Magistrate Judge

APPROVED:

/s/ Steven W. Thomas
_____
Steven W. Thomas
Thomas, Alexander & Forrester LLP
14 27th Avenue
Venice, CA  90291
Telephone:  (310) 961-2542
Facsimile:  (310) 526-6852
Email:  StevenThomas@tafattorneys.com
Attorney for Plaintiffs

/s/ Howad Schiffman
_____
Howard Schiffman
Schulte Roth & Zabel LLP
1152 Fifteenth Street, N.W.
Washington, DC  20005
Telephone:  (202) 729-7470
Facsimile:  (202) 730-4520
Email:  Howard.Schiffman@srz.com
Attorney for Defendant RBS Citizens, N.A.

/s/ Robert B. Christie
_____
Robert B. Christie
Henderson & Lyman
175 West Jackson Boulevard
Suite 240
Chicago, IL  60604
Telephone:  (312) 986-6957
Facsimile:  (312) 986-6961
Email:  rchristie@henderson-lyman.com
Attorney for Defendant Swiss Financial
Services, Inc.