IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:09-cv-02786-RBJ-BNB

Agile Safety Variable Fund, L.P. and Sky Bell Select LP,

     Plaintiffs,

v.

RBS Citizens, N.A. d/b/a Charter One Bank, et al.,

     Defendants.

---

OPPOSITION TO PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S ORDERS
GRANTING IN PART DEFENDANTS' MOTION FOR SANCTIONS AND POSTPONING
FINAL PRETRIAL CONFERENCE

---

Defendant RBS Citizens, N.A. d/b/a Charter One ("Charter One"), by and through

its undersigned counsel, hereby opposes Plaintiffs' Objections to Magistrate Judge Boland's

Order Granting in Part Defendant's Motion for Sanctions and Postponing Final Pretrial

Conference (Doc. No. 247) ("Objections").  As explained below, the objections to the Order

entered September 2, 2011 (Doc. No. 240; "Sept. 2 Order") should be overruled.

## Introduction

Plaintiffs are two professionally managed hedge funds that invested in other

hedge funds that, in turn, invested in a Ponzi scheme.  Plaintiffs are attempting in this action to

recover their losses from Charter One, a commercial bank with which they had no relationship,

by claiming they relied on alleged misrepresentations by Charter One regarding certain of its

banking customers – the hedge funds in which Plaintiffs invested.  Plaintiffs' responses to

written discovery served by Charter One showed unequivocally that all investments made by one

of the Plaintiffs predated Charter One's alleged misrepresentations.  Charter One, after the close

of discovery, moved for summary judgment, in part on the ground that losses incurred by

investing in a Ponzi scheme could not have been caused by post-investment representations.

Plaintiffs' opposition to the summary judgment motion included a witness declaration implying,

contrary to their responses to written discovery, that post-representation investments <u>had</u> been

made.  As a result, the Court found that the declaration created a disputed issue of material fact,

and denied summary judgment.  In light of the declaration, Magistrate Judge Boland reopened

discovery to allow Charter One to conduct extremely limited additional discovery.  Plaintiffs

now ask this Court to overrule Magistrate Boland's decision.

    Stripped of bombast and ad hominem attacks, Plaintiffs' Objections are nothing

more than frustration at being called to task for their own attempts at all costs to obscure

straightforward facts about one of the central issues in the case -- whether one of the two

Plaintiffs even made any investments in the Lancelot hedge funds after Charter One's only

alleged misrepresentations about them.  Notably missing from the Objections is that Charter One

has tried for 14 months to obtain documents and information showing when Plaintiff Agile

Safety Variable Fund, L.P. ("Agile" or "ASVF") and affiliates purchased and sold interests in

Lancelot, and still has not received even a single trade confirmation, account statement, or other

standard document demonstrating such transactions, despite the November 4, 2010 Order of

Magistrate Judge Boland requiring Plaintiffs to produce such materials by November 12, <u>2010</u>.

(Doc. No. 119; "Nov. 4 Order.")  Instead, Plaintiffs submitted a post-discovery declaration from

Agile's disgraced former principal that so muddled the question of when ASVF made its

investments that the Court ruled it created an "issue of fact" with <u>Plaintiffs' own</u> prior

admissions that allowed Plaintiffs to avoid summary judgment.  Recognizing that Plaintiffs had

prejudiced Charter One with their delayed submission of the self-serving and unsupported declaration that appeared inconsistent with Plaintiffs' previous discovery responses regarding the timing of Agile's investments, Magistrate Judge Boland granted Charter One limited discovery requests and a three-hour supplemental deposition of the declarant.  Plaintiffs are protesting that benign and limited additional discovery for no apparent reason other than a desire to avoid creating a clear record for trial on the pivotal issue of whether or not ASVF purchased interests in Lancelot after the date of the alleged misrepresentations upon which Plaintiffs claim to have relied when making investment decisions.

Those Plaintiffs are sophisticated hedge funds -- ASVF and Sky Bell Select, LP -- run by management companies that invested tens of millions of dollars in the Lancelot hedge funds years before anyone associated with either Plaintiff ever communicated with Charter One -- a bank with which Plaintiffs had no relationship whatsoever.  ASVF purchased $9 million in Lancelot limited partnership interests from March 1 to November 1, 2004, and admitted during discovery that it made no additional investments in Lancelot thereafter.  See infra p. 7. Lancelot's business was to make short-term loans to a purported overstock consumer electronics brokerage business run by Minnesota businessman Thomas Petters, who, in Fall 2008, was arrested (and later convicted) for running the business as a Ponzi scheme.  ASVF sued Charter One, which provided various banking services to Lancelot, under the theory that a Charter One loan officer made misrepresentations to an employee of ASVF's management company during a gratuitous phone conversation in late July 2007, i.e., nearly three years after ASVF's last purchase of Lancelot.

Charter One moved for summary judgment, chiefly on the notion that ASVF could never prove any injury-in-fact (a requirement for constitutional standing) or causation or

reliance (requirements for Plaintiffs' asserted causes of action) because its losses occurred years before any contact with Charter One, when ASVF purchased interests in Lancelot hedge funds that Plaintiffs themselves admit in the Complaint were always worthless.  In opposing that motion, Plaintiffs submitted a declaration from Neal Greenberg (Doc. No. 176; "Greenberg Declaration"), who earlier this year consented to U.S. Securities & Exchange Commission charges that <u>he</u> defrauded ASVF's investors by misrepresenting its level of concentration in Lancelot and other Petters-related hedge funds (in which it had also been investing for years before any communications with Charter One).  The Greenberg Declaration implied (though did not expressly state) that ASVF purchased additional Lancelot interests after July 2007 by reinvesting returns on its earlier Lancelot investments and by purchasing interests in an asserted derivative contract that supposedly had exposure to Lancelot.  The Court ruled that the declaration created an issue of fact that precluded summary judgment.

The September 2 Order is simply designed to help Charter One and the Court learn the truth as to that central "issue of fact" -- whether ASVF did or did not purchase interests in Lancelot after July 2007 (and, if so, how many and at what prices).  That Plaintiffs would go to such lengths to avoid that question is puzzling in that their counsel has recently stated that Plaintiffs have no additional documents to produce in that regard.  Charter One naturally wishes to receive a judicially binding admission to that effect from the party itself, and one would think Plaintiffs could provide that with less effort than that required to pursue their Objections to the Order.

Those Objections are premised on essentially four asserted grounds, none of which is valid and none of which comes close to demonstrating that the Order was clearly erroneous or contrary to law, as required under the highly deferential standard for overturning

Magistrate Judges' management of discovery.  First, Plaintiffs try to suggest that the Sept. 2 Order somehow "overturns" this Court's prior rulings denying the summary judgment motion and a related motion to strike the declaration.  But Plaintiffs never identify any holding with which the Order is inconsistent, and there is none.  To the contrary, the Order naturally flowed from the orders issued this past spring; it is designed to help resolve the very "issue of fact" that the Court held the Greenberg Declaration created when the Court declined to strike it.

Second, Plaintiffs argue that the Magistrate Judge lacked authority to issue the Sept. 2 Order because, they claim, they never committed any discovery violation; but that argument fails for at least two reasons.  First, Plaintiffs' discovery violation is obvious.  They stalled until <u>nine months</u> after they were required to produce court-ordered discovery before asserting -- in contravention of their prior statements -- that none existed; they submitted a declaration four months after the production deadline that contradicted their prior discovery responses; and they still have yet to produce any documents supporting the assertions in the declaration, notwithstanding that such documents would fall squarely within the Nov. 4 Order that they were required to comply with more than ten months ago.  Second, the Magistrate Judge's narrowly crafted Order briefly reopening discovery on a limited basis is well within his power regardless of whether there was a discovery violation.

Third, Plaintiffs argue that the limited discovery that Magistrate Judge Boland ordered is unrelated to their discovery violation, and that he was somehow "sandbagged" into granting it.  That argument simply ignores the plain language of the Nov. 4 Order that Plaintiffs violated, which required Plaintiffs to produce, <u>inter alia</u>, buy-sell information for <u>all</u> investments by Plaintiffs in asset-based lending hedge funds, of which Lancelot was one.  Plaintiffs' argument also ignores the papers both parties submitted in support of and in opposition to

Charter One's motion for sanctions.  Charter One's motion requested, <u>inter alia</u>, that Greenberg's deposition be reopened, and that Plaintiffs produce an affidavit saying they have no documents showing purchases for ASVF after July 2007; and the September 2 Order reopens Greenberg's deposition for up to three hours and allows Charter One to serve discovery requests, which Charter One has already used to ask Plaintiffs to identify and produce all documents showing post-July 2007 investments in Lancelot, and a request for admissions that asks Plaintiffs to admit that no such documents from third parties exist.  Plaintiffs, for their part, filed a brief in opposition to the sanctions motion that made the same arguments they now make in the Objections.

Finally, Plaintiffs argue that the sanctions motion that preceded the Sept. 2 Order was untimely because it was made after the close of discovery.  All that needs to be said about that is that (i) Magistrate Judge Boland had entered an order expressly allowing for the motion (<u>see</u> Doc. No. 226), and (ii) the timing of the motion was a product of Plaintiffs' own actions in waiting until three months after discovery closed before springing the Greenberg Declaration on Defendants and until eight months after discovery closed before finally purporting to provide discovery information that they had been promising for months.  As Magistrate Judge Boland correctly recognized, Plaintiffs cannot use their own stalling tactics to conceal information as fundamental as the truth about the timing of Plaintiff ASVF's investments.

### Background

Plaintiffs claim they made purchases in the Lancelot hedge fund relying on misrepresentations allegedly made by Charter One at the end of July 2007.  (Doc. No. 92 ¶ 48.) Plaintiffs also allege in their Complaint that their purchases of Lancelot began almost four years <u>earlier</u> -- in 2003 (Doc. No. 92 ¶ 40).  Through months of discovery, Charter One has been trying

to understand the dates and amounts of investments, if any, made after the alleged July 2007 misrepresentations.

Plaintiffs repeatedly represented that ASVF did not make any purchases in Lancelot after July 2007.  After agreeing to produce all documents concerning Lancelot, including all decisions regarding any "contributions, investments, reinvestments, redemptions, or divestments in or from Lancelot," Plaintiffs produced just one document purporting to show purchases or sales of Lancelot by ASVF.  (Copies of the relevant discovery requests and responses are attached to the accompanying Declaration in Opposition to Plaintiffs' Objections to Magistrate Judge's Order ("Decl.") at Ex. A at 7 (Request Nos. 3, 6) and Ex. B at 3.)  That one-page document, labeled AG002800, listed purchases on March 1, 2004, April 1, 2004, May 1, 2004, July 1, 2004, and November 1, 2004 that totaled $9 million.  (See Decl. Ex. C.)  In response to two distinct interrogatories, Plaintiffs represented that ASVF's purchases of Lancelot appeared on AG002800.[1]  Then, on October 29, 2010, in response to a Fed. R. Civ. P. 36 Request for Admissions, Plaintiffs affirmatively admitted that "as of July 2007 Agile Safety Variable Fund already owned Lancelot limited partnership units and did not purchase any additional units after July 2007."[2]

Plaintiffs still had not, however, met all their discovery obligations, so Charter One filed a motion to compel.  (Doc. No. 109.)  On November 4, 2010, Magistrate Judge Boland entered an Order compelling Plaintiffs to produce, by November 12, 2010, "due diligence files, and buy-sell information from June 1, 2003, to the present, for all Asset Based Lending Funds in

---

[1]     Plaintiffs' Responses to Defendant Citizen Financial Group, Inc.'s First Set of Interrogatories, Interrog. No. 6 (July 7, 2010) (Decl. Ex. F); Plaintiffs' Responses to Defendant's Second Set of Interrogatories, Interrog. No. 5 (Sept. 17, 2010) (Decl. Ex. G); AG002800 Decl. Ex. C).

[2]     Plaintiffs' Response to Defendant's First Set of Requests for Admission, RFA No. 10 (Oct. 29, 2010) (emphasis added) (Decl. Ex. H).

which the plaintiffs and any affiliates who relied on or shared the same due diligence information

invested," as well as "quarterly statements for the period June 1, 2003 to the present, identifying

the assets held by the plaintiffs and their affiliates."  (Doc. No. 119 (emphasis added).)  Plaintiffs

produced various documents on November 11 and 24, 2010, including due diligence files for

several Asset Based Lending ("ABL") investments and monthly "Pricing Reports" for some, but

not all, of the funds for which buy-sell information and quarterly statements were required.[3]

Consistent with AG002800 and Plaintiffs' prior discovery responses, the "Pricing Report" for

ASVF indicated that its purchases of Lancelot all were made in 2004.  (See Decl. Ex. I (showing

$9,000,000 in Annual Subscriptions for Lancelot Partners, LP in 2004); Decl. Exs. J, K, L, M

(showing no subscriptions for Lancelot Partners, LP in 2005, 2006, 2007, or 2008).)

As explained below, however, during the more than ten months since Plaintiffs

made those partial productions in response to the Nov. 4 Order, (i) they repeatedly delayed

responding to Charter One's queries regarding the shortcomings in their productions, (ii) Charter

One moved for summary judgment based on the admissions in the discovery Plaintiffs had

provided, (iii) Plaintiffs successfully opposed Charter One's summary judgment motion by

presenting new evidence and making arguments that conflicted with their prior discovery

admissions, (iv) Charter One raised Plaintiffs' failure to comply with the Nov. 4 Order with

Plaintiffs again, and then with M.J. Boland, who ordered that the issue be resolved or Charter

One file a motion, (v) Plaintiffs finally responded to Charter One's queries by summarily

claiming they had no additional responsive documents, without explaining why it took them nine

months to say that (or why their response conflicted with a number of statements they had

---

[3]     A copy of the November 11, 2010 letter from Jessica Rassler to Eric Bensky is attached
to the Decl. as Ex. N.  A copy of the November 24, 2010 letter from Jessica Rassler to Eric
Bensky is attached to the Decl. as Ex. O.

previously made); and (vi) Charter One timely moved for sanctions, and M.J. Boland issued the

Sept. 2 Order providing for limited additional discovery, which Charter One then served.

        More specifically, on November 19, 2010, Charter One sent a letter to Plaintiffs'

counsel asking questions about the production, including Plaintiffs' statements that some

information from Agile's "PT Tools" computer system was not currently accessible, but that

Plaintiffs were working on restoring access, and that some records relating to purchases and sales

were kept "by the administrators for each fund."  (Decl. Ex. P.)  Receiving no response, Charter

One resent it to Plaintiffs on January 4, 2011 and again on January 21, 2011.  (Decl. Exs. Q, R.)

On January 24, 2011, Plaintiffs counsel advised that they would respond "shortly."  (See Decl.

Ex. S.)  By February 8, 2011, however, Plaintiffs still had not done so; thus, Charter One's

counsel inquired about it during a conference call, at which Plaintiffs' counsel advised that

Plaintiffs intended to respond substantively to the November 19 letter and that such a response

was in the works.  (See Doc. No. 230 ¶ 18.)  Having still received no such response more than

two weeks later, during a February 23, 2011 conference before Magistrate Judge Boland, Charter

One noted that Plaintiffs had not fully satisfied their discovery obligations, and Plaintiffs'

counsel represented that Plaintiffs were in the process of responding.  (Decl. Ex. T.)  (In a telling

display of the lengths to which Plaintiffs have gone in an effort to skirt their discovery

obligations, Plaintiffs opposed the motion for sanctions in part by submitting a declaration from

their counsel denying the above facts regarding her February 2011 representations, apparently

not realizing that there was a transcript of the February 23 conference contradicting her claims.)[4] Charter One again requested the missing materials from Plaintiffs on March 24, 2011.  (See Decl. Ex. V.)

Relying in large part on Plaintiffs' discovery responses admitting that ASVF purchased no Lancelot interests after November 2004, Charter One filed an Amended Motion for Summary Judgment on February 28, 2011.  (Doc. No. 166.)  Because the only asserted communications between either Plaintiff and Charter One occurred in July 2007, the three-year gap between ASVF's investments and its alleged communications with Charter One raised serious questions (at a minimum) regarding that plaintiff's ability to show the required elements of injury-in-fact, causation, and reliance, thus providing at least colorable grounds for summary judgment, as the Court correctly recognized in granting Charter One leave to file the summary judgment motion.  (See Mar. 3, 2011 Tr. at 30 (Court stating, "I have reviewed the defendants' amended motion for summary judgment, and I believe that they are presenting a colorable argument for their position that the Court lacks standing to consider the plaintiffs' claim in this case") (Decl. Ex. U).)

On March 24, 2011, Plaintiffs filed papers in opposition to Charter One's summary judgment motion, relying largely on a declaration from Agile's Neal Greenberg saying he "decide[d]" to reinvest supposed Lancelot returns and to purchase a "derivative contract with KBC" that had exposure to Lancelot.  (Greenberg Declaration ¶¶ 2, 13.)

---

[4]       Contrast, e.g., Decl. of Jessica Rassler (Doc. No. 238) ¶ 5 ("Similarly untrue is Charter One's statement . . . that during the February 23, 2011 conference before Magistrate Judge Boland I 'advised that [Plaintiffs] were in the process of responding to the remaining requests.'  I did not make that statement . . . ." (citation omitted; brackets in declaration)), with Feb. 23, 2011 Tr. at 5 ("MS. RASSLER: And just briefly, Your Honor.  In response to the initial letter, we did send some additional documents, and we are in the process of responding in writing to their remaining requests.") (Decl. Ex. T).

On April 11, 2011, Charter One filed a motion to strike that declaration and others that Plaintiffs submitted in opposition to summary judgment, explaining that it was doing so out of an abundance of caution in light of prior Tenth Circuit precedent to ensure that certain arguments were not waived.[5]  At the April 25, 2011 oral argument on the summary judgment motion, this Court denied the motion to strike, saying it would take Charter One's arguments into account when deciding the summary judgment motion, and opining that those arguments went to the weight that should be attributed to the statements made in the declarations.

On May 31, 2011, the Court issued an Opinion and Order denying the motion for summary judgment, in large part on the ground that, through the assertions in the Greenberg Declaration, Plaintiffs had "come forward with some evidence" of "monthly decisions to reinvest their investment returns."  (Doc. No. 215 at 15-16, 18, 20-21, 22.)  Charter One respectfully believes the decision was in error in that respect and others, but heeded the Tenth Circuit's admonition that motions for reconsideration are "not appropriate to revisit issues already addressed," Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000), absent an

---

[5]      (See Doc. No. 188 at 2, n.1 (citing Thrasher v. B&B Chem. Co., 2 F.3d 995, 998 (10th Cir. 1993) (failure to move to strike waived defect in affidavit supporting summary judgment motion)).)

intervening change in the law or the availability of new evidence.[6]  Accordingly, Charter One has been working to prepare for trial.

To that end, Charter One inquired as to when Plaintiffs would provide their long-promised response to its November 19 letter, submitted a proposed final pre-trial order with Plaintiffs and co-Defendant Swiss Financial Services that noted Charter One's position that the discovery remained outstanding, and attended a final pre-trial conference on July 26, 2011 at which counsel for the parties addressed the discovery issue before Magistrate Judge Boland, who gave the parties until August 12, 2011 to resolve the issue or, if necessary, file a motion.  (See Decl. Ex. W at 7; Doc. No. 226.)

On August 11, 2011, Plaintiffs' counsel finally sent Defendants' counsel a response to the November 19, 2010 letter.  It was not worth the wait.  Plaintiffs' response indicated, inter alia, (a) that neither the affiliates of Sky Bell Select LP nor their administrators maintained buy-sell information or periodic statements of assets (notwithstanding, and without acknowledging, the representation in counsel's November 11, 2010 letter that at least some such information "was kept by the administrators for each fund"), (b) that, "as previously stated, the PT Tools database cannot be restored" (notwithstanding that Plaintiffs had never previously so stated), and (c) that Plaintiffs "underst[oo]d" that documents concerning the Greenberg

---

[6]      In a blatant attempt to divert attention from Plaintiffs' own conduct and to prejudice Charter One in the eyes of this Court, Plaintiffs' Objections irresponsibly accuse Charter One's counsel of committing supposed ethical violations during a hearing for a case that Plaintiffs and several of their commonly managed hedge funds had filed in Chicago, under Illinois law, against Defendants and certain of their affiliates involving the exact same transactions underlying this proceeding.  After full briefing on Defendants' motions to dismiss that case based on the admissions Plaintiffs had made in discovery here, Plaintiffs voluntarily dismissed it before the Illinois court could issue its anticipated substantive ruling against them.  In the course of falsely accusing Charter One's counsel of making certain statements at the Illinois hearing (supposed statements that, in all events, are irrelevant to the Sept. 2 Order in this case), the Objections fail to mention Plaintiffs' blatant forum shopping and inconsistent positions with respect to which state's law should govern the dispute and where it should be litigated.

Declaration "were already produced," but that they were "double checking" to be sure.  (See Decl. Ex. X.)  The response did not attempt to provide any explanation for the implausible notion that records listing the assets held and transactions engaged in by multi-million dollar hedge funds were not kept or maintained by the funds, their managers, or their administrators, and it provided no detail regarding what efforts were made to obtain the materials from any of those sources.  Nor did it indicate what efforts were made to restore the PT Tools database or when, how, and by whom it was determined that it could not be restored.  Most importantly, the response did not specify which documents concerning the Greenberg Declaration were produced or when such production supposedly occurred.

Charter One accordingly filed a motion for sanctions on August 12, 2011 (Doc. No. 227).  In opposing that motion, Plaintiffs made largely the same arguments they make in their Objections.  (See Doc. No. 237.)  Magistrate Judge Boland held a hearing on September 2, 2010.  After hearing argument from Charter One and Plaintiffs, he found that "the affidavit of Mr. Greenberg is inconsistent -- or at least appears to be inconsistent with other discovery responses previously given."  (Decl. Ex. Y at 49-50.)  Observing that the "affidavit came after the close of discovery and after [he] had ruled that [he] wouldn't reopen discovery," Magistrate Judge Boland found that "the affidavit constitutes good cause to allow additional discovery to occur."  (Id. at 50.)  More specifically, Magistrate Judge Boland ruled that Charter One could serve up to five interrogatories, five production requests, and five requests for admission, and that Mr. Greenberg's deposition could be reopened for up to three hours.  (Id.; Sept. 2 Order at 1.)

Charter One then served three document requests, three interrogatories, and a request for admission that, broadly speaking, ask Plaintiffs to identify and produce any

documents supporting the claims in the Greenberg Declaration and in their briefs in opposition to

the summary judgment motion to the effect that ASVF purchased Lancelot interests after 2004,

or to confirm that no such documents exist.  (See Decl. Exs. Z, AA, and D.)  Four days later,

Plaintiffs served their Objections.

**Argument**

Overturning an order of a Magistrate Judge is a high hurdle, requiring Plaintiffs to

show that the order is "clearly erroneous" or "contrary to law."  28 U.S.C. 636 (b)(1)(A); Fed. R.

Civ. P. 72.  Under that standard, the reviewing court must affirm unless it "'on the entire

evidence is left with the definite and firm conviction that a mistake has been committed.'"  Allen

v. Sybase, Inc., 468 F.3d 642, 650 (10th Cir. 2006) (citing Ocelot Oil Corp. v. Sparrow

Industries, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting United States v. Gypsum Co., 333

U.S. 364, 395 (1948)).  If there are "two permissible views, the reviewing court should not

overturn the decision solely because it would have chosen the other view."  Westefer v. Snyder,

472 F. Supp. 2d 1034, 1037 (N.D. Ill. 2006) (internal citation omitted); see also Bowne of New

York City, Inc. v. AmBase Corporation, 161 F.R.D. 258, 262 (S.D.N.Y. 1995).  The Objections

do not meet that high standard because all of Plaintiffs' attacks on M.J. Boland's Order are

thoroughly meritless.

**A.      The Sept. 2 Order Does Not Overturn or Conflict With Any Prior Order of this Court.**

Plaintiffs claim that Magistrate Judge Boland "overturns a decision of this Court"

by finding that "'the affidavit of Mr. Greenberg is inconsistent -- or at least appears to be

inconsistent with other discovery responses previously given.'" (Objections at 3 (quoting Sept. 2

Tr. (Decl. Ex. Y) at 49-50).)  But the Court never held that the Greenberg Declaration was

consistent with Plaintiffs' prior discovery responses.  To the contrary, the Court expressly ruled

that the Greenberg Declaration created an <u>issue of fact</u> regarding when ASVF's investments were made.  (<u>See, e.g.</u>, Doc. No. 215 at 22.)  The limited supplemental discovery that M.J. Boland granted is thus a natural outgrowth of that ruling; it is designed to elicit evidence to help resolve that issue of fact.  Nothing in the Court's rulings denying summary judgment or declining to strike, and then considering, the Greenberg Declaration even addressed -- let alone ruled on -- the question of whether there should be supplemental discovery.

Furthermore, Plaintiffs' very suggestion that the Greenberg Declaration could have been found to be anything but "inconsistent -- or at least app[arently] inconsistent" -- with Plaintiffs' prior discovery responses (Sept. 2 Tr. (Decl. Ex. Y) at 49) is preposterous.  Plaintiffs stated on no fewer than two prior occasions that all purchases and sales of Lancelot by ASVF, including "reinvestment of returns," were shown on AG002800, which shows purchases on only five dates -- March 1, 2004, April 1, 2004, May 1, 2004, July 1, 2004, and November 1, 2004 (<u>see</u> Decl. Exs. C, F, G); but after the close of discovery they submitted the Greenberg Declaration asserting that "ASVF relied on the representations by Charter One . . . to invest its returns in Lancelot each month" after July 2007 (Doc. No. 176 ¶ 13).  Likewise, Plaintiffs had admitted that ASVF "already owned Lancelot limited partnership units and did not purchase any additional units after July 2007" (Decl. Ex. H); but Greenberg claimed in his post-discovery declaration that, from 2004 <u>to 2008</u>, Agile "made the investment decision to increase ASVF investments in Lancelot limited partnerships through our derivative contract with KBC" (Doc. No. 176 ¶ 2).  While Charter One respectfully believes the Court erred in declining to strike the Greenberg Declaration, Plaintiffs cannot turn the Court's ruling that the declaration's assertions created issues of fact into a ruling that those assertions were <u>consistent</u> with Plaintiffs' discovery

admissions <u>as a matter of law</u>, let alone that it somehow addressed, implicitly or explicitly, whether discovery into those new "issues of fact" would be permissible.

### B.      Magistrate Judge Boland Had Full Authority to Reopen Discovery.

Plaintiffs assert that Magistrate Judge Boland "indicated that he was not finding a discovery violation" (Objections at 13), and argue from there that he thus lacked authority to order the relief in the Sept. 2 Order (<u>id.</u> at 14-16).  They are wrong in every respect.  First, Magistrate Judge Boland nowhere stated (either on page 24 of the hearing transcript, which the Objections curiously cite, or otherwise) that he was not finding a discovery violation.

Second, Plaintiffs' discovery violations are undeniable.  The Nov. 4 Order required Plaintiffs to produce buy-sell information for all of their own and commonly managed hedge funds' investments in ABL funds, including Lancelot, by November 12, 2010.  They did not submit the Greenberg Declaration with its assertions of never-before-disclosed post-2004 purchases of Lancelot interests until March 24, 2011.  Further, to this day they still have not produced any documents identifying those supposed post-2004 investments.  Additionally, having represented (orally and in writing) that they were attempting to obtain required documents from the PT Tools database, and that they would otherwise respond to Charter One's letter explaining that they were required to obtain buy-sell documents and quarterly statements from the funds' administrators, Plaintiffs failed to do so (or to claim, however implausibly, that they could not do so) until nine months after the Court-imposed deadline for complying with the Nov. 4 Order, eight months after the close of discovery, and five-and-a-half months after they represented to the Court at the February 23 status conference that they would do so.  Clearly, such prejudicial delay constitutes a discovery violation.

Finally, Magistrate Judge Boland had full authority to reopen discovery even without a discovery violation by Plaintiffs.  It is hornbook law that courts have "broad discretion

over the control of discovery," <u>S.E.C. v. Merrill Scott & Associates, Ltd.</u>, 600 F.3d 1262, 1271 (10th Cir. 2010), and that whether to modify a scheduling order "to extend or reopen discovery is committed to the sound discretion of the court," <u>Smith v. United States</u>, 834 F.2d 166, 169 (10th Cir. 1987).  M.J. Boland explained that the Greenberg Declaration constituted "good cause to allow additional discovery to occur."  (Decl. Ex. Y at 50.)

   The correctness of that conclusion is undeniable in light of the extreme unfairness to Defendants of Plaintiffs' post-discovery springing of the Greenberg Declaration upon them. Defendants took the depositions of five Agile witnesses, including Greenberg, after Plaintiffs had produced documents and, in some cases, submitted other discovery responses indicating that ASVF's only investments in Lancelot were in 2004, and necessarily before Plaintiffs ever suggested, for example, that ASVF had also invested in Lancelot through a derivative contract with KBC.  Moreover, Charter One moved for summary judgment based on ASVF's status as a mere holder of already worthless securities at the time of the only alleged communications with Charter One, relying on the universal law recognizing that such plaintiffs cannot establish causation because their losses had already occurred prior to the defendants' asserted misconduct.[7]  Charter One's motion also relied on the prevailing law (including in Colorado) providing that mere "holders" cannot establish reliance without "allegations of fact tending to

---

[7] <u>See, e.g.</u>, <u>Crocker v. FDIC</u>, 826 F.2d 347, 350, 351 n.6 (5th Cir. 1987) (ruling that holders had no standing based on not selling their artificially inflated stock for a profit or to minimize their loss because "[i]t is too much to ask the court to recognize an injury based on a lost profit to which no one was lawfully entitled"); <u>see also</u> <u>Arent v. Distribution Sciences, Inc.</u>, 975 F.2d 1370, 1374 (8th Cir. 1992) ("Plaintiffs argue that they would have sold their . . . stock had they known that the merger would not occur.  But if everyone had known this adverse fact, then the stock's value would have reflected the adversity.  Only if plaintiffs were the only ones [defendant] told, so that they could have improperly traded on inside information in dealing with third party purchasers, would disclosure have aided their investments fortunes."); <u>Dloogatch v. Brincat</u>, 920 N.E.2d 1161, 1171 (1st Dist. 2009) (ruling that holders of securities that had already declined in value by the time of the alleged misrepresentations could not allege causation because "plaintiffs could not have sold their stock at the artificially high price absent the fraud").

demonstrate actual reliance," <u>Ohanessian v. Pusey</u>, No. 09-cv-01113, 2010 WL 728549, at *1

(D. Colo. Feb. 25, 2010), such as "how many shares the plaintiff would have sold, and when the

sale would take place," <u>Small v. Fritz Companies, Inc.</u>, 65 P.3d 1255, 1271 (Cal. 2003) (cited by

<u>Ohanessian</u>), none of which Plaintiffs had shown.  The Sept. 2 Order appropriately attempts to

ameliorate (to some extent) the unfair prejudice that Plaintiffs' conduct has imposed on

Defendants, and, even more importantly, to allow the parties to develop a full factual record from

which the truth can be determined.

      **C.**    **The Limited Discovery Granted in the Sept. 2 Order is Directly Related to Plaintiffs' Violation of the Nov. 4 Order.**

      Ignoring M.J. Boland's authority to reopen discovery for good cause with or

without a discovery violation, Plaintiffs argue that M.J. Boland was "sandbagged" into ordering

discovery unrelated to their violations of the Nov. 4 Order.  (Objections at 6, 13-14.)  Even

putting aside the implausible and outlandish suggestion that such an experienced jurist was

"sandbagged," they are wrong in all respects:  M.J. Boland ordered limited supplemental

discovery precisely related to certain of Plaintiffs' violations of his Nov. 4 Order, and he did so

after Plaintiffs had every opportunity to make -- and did make -- the very arguments that they

now make in their Objections.

      The Nov. 4 Order required Plaintiffs to produce buy-sell information for "all

Asset Based Lending Funds in which the plaintiffs and any affiliates who relied on or shared the

same due diligence information invested."  (Doc. No. 119 at 1.)  Lancelot was an Asset Based

Lending fund, as expressly noted during the hearing that resulted in the Nov. 4 Order.[8]  Insofar

---

[8]    <u>See</u> Decl. Ex. E at 18:4-9 ("The testimony of the witnesses are that there [are] 12 funds which the Agile group invested in which are ABL funds.  One, Drawbridge; two, Capstone; three, Sandelman; four, Silar; five, DB Zwirn, Z-W-I-R-N; six, Centrix, seven, Stewardship; eight, Arrow Head; nine, Fortress; ten, Eden Rock; eleven, Lancelot, twelve Palm Beach.").

as the post-discovery Greenberg Declaration implies that ASVF bought Lancelot interests that were not disclosed by November 12, 2010, as required by the Nov. 4 Order, a sanction allowing limited additional discovery with regards to those alleged purchases is wholly appropriate and directly related to the violation.  See, e.g., Iowa Pacific Holdings, LLC v. National R.R. Passenger Corp., 2011 WL 2292307, at *2 (D. Colo. June 9, 2011) (granting sanction by reopening discovery for three-hour deposition to explain documents produced in untimely fashion).

Plaintiffs' suggestion that M.J. Boland was somehow "sandbagged" into ordering that remedy is simply ridiculous.  Charter One argued in its Motion for Sanctions that the Greenberg Declaration was inconsistent with Plaintiffs' prior discovery responses (see Doc. No. 228 at 6), and explicitly requested the reopening of his deposition to explain the alleged "reinvestments" and purchases through the asserted KBC derivative contract.  (See id. at 3.) Plaintiffs had every opportunity to respond, and in fact filed an opposition brief nearly twice as long as Charter One's motion that set forth the same arguments now presented to this Court in their Objections.[9]  Magistrate Judge Boland thus had all of Plaintiffs' current arguments before him.  Furthermore, even if Plaintiffs had not made those same arguments, any such failure would hardly be grounds for overturning the Order.

---

[9]     Specifically, Plaintiffs expressly addressed the Greenberg Declaration (see Doc. No. 237 at 17-18), and argued that Charter One was seeking a "second bite at the summary judgment apple" (id. at 1), that Charter One was repeating arguments rejected previously by this Court (id. at 1-3, 10-11, 17), that the sanctions motion was "an untimely attempt to circumvent the rulings of this Court," (id. at 6), and that the sanctions demanded (including additional discovery) were unwarranted (id. at 18-19).

**D.      Plaintiffs Cannot Suppress the Truth by Asserting New Facts After Discovery Closes and then Claiming Efforts to Obtain Discovery of Those Facts are Untimely Because Discovery Has Closed.**

In a breathtaking display of temerity, Plaintiffs argue that the Sept. 2 Order should be vacated because Charter One filed its sanctions motion after the close of discovery, and that M.J. Boland "never explained why" it was acceptable to entertain the motion. (Objections at 21-23.)  But Magistrate Judge Boland -- who had previously set a schedule allowing for such a motion (Doc. No. 226) -- explained exactly why:  Plaintiffs waited until after discovery had closed to submit a declaration that was "inconsistent -- or at least [apparently] inconsistent with other discovery responses previously given," which "constitutes good cause to allow additional discovery to occur."  (Decl. Ex. Y at 49-50.)  Plaintiffs naturally identify no authority in support of their fanciful notion that a party can (a) say one thing about a material issue in the case during the discovery period, (b) ignore timely identified shortcomings in their response to a court order compelling them to provide discovery, (c) submit contradictory (and uncorroborated) evidence about that material issue during summary judgment briefing, (d) avoid dismissal because the court finds that such evidence creates an issue of fact, and (e) then hide from having to provide discovery regarding the new evidence and the fact issue it created because the adversary had not requested it during the discovery period before it had even been raised.

<u>Conclusion</u>

The purpose of a trial is to discern the truth.  But Plaintiffs have done everything they can to try to prevent Defendants and the Court from learning the truth about the simple and fundamental questions of when ASVF purchased interests in Lancelot, how many interests it purchased, and what it paid for them.  M.J. Boland issued an Order that allows Charter One to shine a light on the disputed post-discovery evidence that Plaintiffs belatedly presented on a

central issue.  It was anything but clearly erroneous or contrary to law for him to do so.

Accordingly, the Objections should be overruled.


Dated this 30th day of September, 2011.          Respectfully submitted,

                                                 /s/ Howard Schiffman
                                                 Howard Schiffman
                                                 Eric A. Bensky
                                                 Schulte Roth & Zabel LLP
                                                 1152 15th Street N.W. Suite 850
                                                 Washington, D.C. 20015
                                                 Telephone: (202) 729-7470
                                                 Facsimile: (202) 730-4520
                                                 E-Mail:  howard.schiffman@srz.com
                                                 E-Mail:  eric.bensky@srz.com
                                                 *Counsel for Defendant RBS Citizens, N.A.*

## Certificate of Service

I hereby certify that on this 30th day of September, 2011, I electronically filed the

Opposition to Plaintiffs' Objections to Magistrate Judge's Orders Granting in Part Defendants'

Motion for Sanctions and Postponing Final Pretrial Conference with the Clerk of the Court using

the CM/ECF System, which will send notification of such filing to each of the following:


Plaintiffs' Attorneys:

    Steven W. Thomas
    Thomas, Alexander & Forrester LLP
    14-27th Ave
    Venice, CA 90291
    steven.thomas@tafattorneys.com

    Steven M. Feder
    Feder Law Firm
    730 17th Street, Suite 550
    Denver, CO 80202
    steve@federlawfirm.com

Attorneys for Swiss Financial Services, Inc.:

    Robert B. Christie
    Henderson & Lyman
    175 West Jackson Blvd, Suite 240
    Chicago, IL 60604
    rchristie@henderson-lyman.com

    Holly Stein Sollod
    Brooke Harrison McCarthy
    Holland & Hart LLP
    555 17th Street, Suite 3200
    Denver, CO 80202
    hsteinsollod@hollandhart.com
    bhmccarthy@hollandhart.com


    /s Eric A. Bensky
    Howard Schiffman
    Eric A. Bensky
    Schulte Roth & Zabel LLP
    1152 15th Street N.W., Suite 850
    Washington, DC  20005
    Telephone:  202-729-7470
    E-Mail:  howard.schiffman@srz.com
    E-Mail:  eric.bensky@srz.com

    Counsel for Defendant RBS Citizens, N.A.