IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:09-cv-02786-RBJ-BNB

AGILE SAFETY VARIABLE FUND, L.P. and
SKY BELL SELECT LP,

    Plaintiffs,

v.

RBS CITIZENS, N.A. d/b/a CHARTER ONE BANK, et al.,

    Defendants.

---

REPLY BRIEF IN SUPPORT OF MOTION FOR LEAVE TO FILE
RBS CITIZENS, N.A.'S RENEWED MOTION FOR SUMMARY JUDGMENT

---

**Introduction**

In opposing the motion for leave to renew the summary judgment motion of Defendant RBS Citizens, N.A. ("Charter One"), Plaintiffs raise a number of erroneous procedural arguments and mischaracterize the Order deciding Charter One's prior summary judgment motion. But most telling is what Plaintiffs' Memorandum in Opposition to RBS Citizens, N.A.'s Motion for Leave to File a Renewed Motion for Summary Judgment ("Opposition" or "Opp.") does not do: it never identifies any disputed fact that a jury could help resolve concerning the critical issue of the relative timing of Charter One's alleged misrepresentations and the investments by Plaintiff Agile Safety Variable Fund, L.P. ("ASVF") in Lancelot Investors Fund, L.P. ("Lancelot"). Instead, the Opposition makes clear that the only questions to be resolved with respect to the relative timing of those events are issues of law that this Court can and should decide in Charter One's favor, which could save the Court, the

eventual jurors, the witnesses, and the parties considerable time and expense that will otherwise be spent on what is scheduled to be an eight-day trial beginning April 23 of this year.

There has never been any dispute that ASVF purchased its only "units" of the Lancelot hedge fund in 2004, or that Charter One's only alleged misrepresentations were purportedly made (if at all) in late July 2007. ASVF avoided summary judgment despite those uncontested facts, however, by submitting a post-discovery declaration from the disgraced principal of ASVF's investment manager, Neal Greenberg, claiming ASVF made monthly "reinvestments" in Lancelot into 2008, and that ASVF purchased additional interests in Lancelot via a "derivative contract" with an entity called KBC. The Court ruled that the declaration potentially created a triable factual issue, but supplemental discovery conducted this past fall (after the summary judgment ruling) demonstrated what that Greenberg Declaration really meant. In particular, the discovery showed the "reinvestments" were not new investments by ASVF of cash in Lancelot, but simply the accretion in the purported value of previously-made investments based on interest that Lancelot claimed to have earned on its own investments with what turned out to be the massive Ponzi scheme run by Thomas Petters. (See pages 13-15 of RBS Citizens, N.A.'s Renewed Motion for Summary Judgment ("Renewed Mot."), which Charter One provisionally filed along with its Motion for Leave to File the same ("Motion for Leave").) The supplemental discovery also showed that ASVF made no investments whatsoever in Lancelot through KBC. Plaintiffs' Opposition entirely ignores this evidence. Nothing in Plaintiffs' Opposition says otherwise.

Instead, the Opposition seeks to draw a distinction between making "investments" in, and purchasing "units" of, Lancelot (see Opp. at 9, 19); but the supplemental discovery has proven that the supposed distinction is just semantic. The evidence is undisputed that the only

times ASVF paid money in exchange for an interest (however defined) in Lancelot was in 2004, and that what Plaintiffs describe as ASVF's "investments" or "reinvestments" in Lancelot after that point were nothing more than the purported (but, as Mr. Greenberg himself admits, fabricated) monthly appreciation in the value of ASVF's interest in Lancelot. Whether ASVF can recover from Charter One the amount of that purported but fabricated monthly appreciation is purely a legal question; there are no disputed facts for a jury to answer with respect to it.

As a result, the Opposition to Charter One's request for briefing on that legal question understandably limits its arguments chiefly to procedural ones. For example, the Opposition argues that Charter One somehow disregarded comments made by Magistrate Judge Boland during last month's Final Pretrial Conference by choosing to file the Motion for Leave rather than some other procedural vehicle. (See Opp. at 1-2, 10-13.) But Charter One has done exactly what M.J. Boland suggested it do: file a motion for leave to renew its summary judgment motion. Furthermore, the applicable law clearly shows that renewing prior summary judgment motions is entirely proper. Plaintiffs also erroneously argue that the May 31, 2011 Order denying summary judgment ("May 31 Order") was decided as a matter of law (see id. at 2), rather than based on the view of the Honorable William J. Martinez that there were issues of fact raised by the Greenberg Declaration. Those issues have since been resolved by the evidence that emerged during the supplemental discovery, and, contrary to the Opposition's contention, that evidence clearly did not exist at the time of the May 31 Order.

**Argument**

I. PLAINTIFFS' PROCEDURAL ARGUMENTS ARE FLATLY INCONSISTENT WITH MAGISTRATE JUDGE BOLAND'S RECOMMENDATION AND THE LAW.

Plaintiffs devote much of their Opposition brief to arguing that the Motion for Leave is procedurally improper, and in support they point to certain comments by Magistrate

Judge Boland during last month's Final Pretrial Conference. (See Opp. at 1-2, 10-13.) But M.J. Boland specifically suggested that Charter One do exactly what it has done here. After explaining that the Federal Rules' 30-day post-discovery period for filing summary judgment motions did not apply, and that the motion Charter One said it was contemplating sounded to him like a Rule 59 or 60 motion, M.J. Boland said, "[i]f I were you, however, I would file a motion with the district judge to renew my motion for summary judgment." (Transcript of Dec. 8, 2011 Final Pretrial Conf. ("Tr.") at 10:7-9.)[1] Charter One followed that advice to the letter by filing the Motion for Leave.

In support of that motion, Charter One has referenced certain procedural rules and mechanisms (e.g., Fed. R. Civ. P. 54(b), Fed. R. Civ. P. 60(c), and motions for reconsideration). The Opposition constructs straw man arguments by pretending the Motion for Leave asserts that certain of those rules mandate consideration of the renewed summary judgment motion. (See Opp. at 1-2, 11-12.) Instead, however, the Motion for Leave makes clear that those rules (including the standards for motions for reconsideration) demonstrate by analogy why granting the requested leave would be an appropriate exercise of this Court's discretion. For example, Plaintiffs argue that the Motion for Leave is untimely because Fed. R. Civ. P. 56(b)'s time limits do not apply (Opp. at 11-12), but Rule 56(b) is not the basis for the motion; it is just one of many reasons why the Court should exercise its discretion to grant leave. Significantly, Plaintiffs do not address the substantive reason why parties are typically permitted to file dispositive motions within 30 days after the close of discovery: so that, if discovery shows no genuine issue of material fact and that a party is entitled to judgment as a matter of law, the parties need not

---

[1] Plaintiffs' counsel thereafter said he "would object to the Court providing litigation advice," which M.J. Boland described as "just ridiculous" and "out of line." (Tr. at 10:19 - 11:1.) A copy of the Tr. is attached as Exhibit A of the January 17, 2012 Declaration of Eric A. Bensky submitted herewith.

expend their resources and waste the Court's and jury's time litigating such issues at trial. Those purposes behind Rule 56(b) are at least as applicable here -- in the context of supplemental discovery conducted on a critical issue in the case -- as they are with respect to the ordinary discovery period contemplated by the Federal Rules' drafters.

Plaintiffs also suggest that renewing summary judgment motions is improper. (See, e.g., Opp. at 2, 4, 10.) But the law is the opposite. The Tenth Circuit has indicated that denials of summary judgment, like all interlocutory orders, are subject to revision "'at any time before entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.'" Raytheon Constructors, Inc. v. Asarco Inc., 368 F.3d 1214, 1216-17, 1220 (10th Cir. 2003) (quoting Fed. R. Civ. P. 54(b) and holding that District Court erred in not revising its earlier order denying defendant summary judgment). Thus, it is perfectly proper for courts to revise interlocutory orders on summary judgment motions. See, e.g., Fye v. Okla. Corp. Comm'n, 516 F.3d 1217, 1224 n.2 (10th Cir. 2008) ("The District Court's partial summary judgment ruling was not a final judgment. Thus, [plaintiff's] motion for reconsideration is considered an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment. . . . In such a case, the district court is not bound by the strict standards for altering or amending a judgment encompassed in Federal Rules of Civil Procedure 59(e) and 60(b).") (citations and internal

quotation marks omitted);[2] Taylor v. Ortiz, No. 05-cv-00574-PAB-MJW, 2010 WL 882316, at *2 (D. Colo. Mar. 5, 2010) (observing there are "several cases noting that courts may revise orders granting partial summary judgment, as those orders are not final and appealable"); see also Alberty-Velez v. Corporacion de Puerto Rico Para La Difusion Publica, 361 F.3d 1, 6 n.5 (1st Cir. 2004) (rejecting contention that court could not reconsider partial summary judgment ruling later in litigation because a "partial summary judgment order is not a final judgment but is merely a pre-trial adjudication that certain issues are established for trial," and a district court "retains jurisdiction to modify a Rule 56(d) motion at any time").

## II. THE SUPPLEMENTAL DISCOVERY PRODUCED NEW EVIDENCE THAT RESOLVES A KEY ISSUE OF FACT TO ALLOW FOR A DISPOSITIVE LEGAL RULING.

Plaintiffs' Opposition confirms that there is no factual issue for the jury to determine with respect to the relative timing of ASVF's investments and Charter One's alleged representations. Now that the supplemental discovery has been completed, all the facts regarding that critical topic are on the table, and the parties agree about them: (1) ASVF made its only purchases of Lancelot interests in 2004; (2) Charter One's only alleged representations

---

[2]   It is well established within this Circuit that the requirements of Rules 59 and 60 do not apply to District Courts' consideration of prior interlocutory orders. See, e.g., Trujillo v. Board of Educ. of Albuquerque Public Schools, 212 Fed. Appx 760, 755, 756 (10th Cir. 2007) (explaining that "[a] district court has discretion to revise interlocutory orders prior to entry of final judgment," and concluding that court "did not err in failing to apply the standards for Rule 59(e) and Rule 60(b) motions to [the plaintiff's] motion for reconsideration") (unpublished); Raytheon Constructors, Inc., 368 F.3d at 1217 (holding that "the district court was incorrect to treat Raytheon's motion for reconsideration under Rule 60(b), which only applies to final orders or judgments. Instead, 'any order . . . however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties'" (quoting FRCP 54(b)); Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., 115 F. Supp. 2d 1250, 1256 (D. Colo. Aug. 31, 2000) (explaining that court may alter interlocutory orders even where more stringent requirements applicable to motions to alter or amend final judgments under Rules 59(e) or 60(b) are not satisfied).

were in late July 2007; and (3) thereafter, ASVF purchased no additional Lancelot interests and paid no money to Lancelot, but simply did not redeem the interests it had previously purchased -- interests that, though in fact worthless (see Dkt. 92 ¶ 5), had purportedly accrued in value by virtue of Lancelot's reporting of fabricated net asset value ("NAV") increases.

The Opposition does not take issue with the key undisputed facts that Charter One emphasizes in its renewed summary judgment motion:

- that "ASVF did not purchase any Lancelot interests after Charter One's alleged July 2007 representations" (Renewed Mot. at 10);

- that "ASVF did not otherwise put money into Lancelot after July 2007, as ASVF's asserted monthly 'reinvestments' in Lancelot were nothing more than ASVF's share of Lancelot's purported increased net asset value each month from interest that Lancelot supposedly made on its loans to Petters, which Greenberg admitted was not really earned by Lancelot because the claimed interest was false at the time" (id. at 2-3; see also id. at 15, 18-19); and

- that "ASVF put no money into KBC after 2006," and Plaintiffs and Mr. Greenberg know of no investments by KBC in Lancelot at all" (id. at 2; see also id. at 18).

The only remaining issues are semantic and legal. Plaintiffs say that ASVF made "reinvestments" when it decided each month not to redeem any portion of the purported (but fabricated) increases in the NAV that Lancelot was (falsely) reporting (see Opp. at 4-5, 19-23); Charter One, on the other hand, believes those monthly decisions do not amount to new investments. But both parties agree that ASVF did not expend even a dime's worth of money to purchase so much as one additional unit of Lancelot interests after July 2007 (or, indeed, after November 1, 2004). Thus, there is no dispute as to the substance of what happened. The only dispute is over its legal implications.

This Court should grant the Motion for Leave in order to resolve that critical legal dispute. The dispute boils down to two legal questions: (A) whether, as at least one court has

held as a matter of law, monthly decisions not to redeem interest payments (even real interest payments) are not purchases upon which plaintiffs can assert claims (see Renewed Mot. at 15 (citing Ahearn v. Gaussoin, 611 F. Supp. 1465, 1479 (D. Ore. 1985)); see also Colo. Rev. Stat. § 11-51-201(b) (defining purchase to include the "acquisition of a security or interest in a security for value" (emphasis added); Colo. Rev. Stat. § 11-51-201(h) (providing that the terms purchase and sale "do not include . . . any dividend payable by an issuer only in its own securities if nothing of value is given by stockholders for the dividend")), and (B) whether, under the undisputed facts, there was no injury-in-fact or damage to ASVF that is fairly traceable to, or was caused by, Charter One -- as the Fifth Circuit, Eighth Circuit, and Illinois appellate court have all held in similar contexts.[3]  This Court should grant the Motion for Leave so that it can receive full briefing and argument on those purely legal questions, which, if decided in Charter One's favor (as the law requires), will obviate any need for trial on ASVF's claims against Charter One.

        The Opposition's arguments against granting such leave lack merit.  The Opposition first asserts that the May 31 Order denied summary judgment as a matter of law rather than due to the existence of issues of fact.  (See Opp. at 2, 10 n.2.)  But the plain text of the Order belies that claim.  (See, e.g., Dkt. 215 at 21-22 ("Defendants argue that because Agile

---

[3]    See Crocker v. FDIC, 826 F.2d 347, 350, 351 n.6 (5th Cir. 1987) (ruling that holders had no standing based on not selling their artificially inflated stock for a profit or to minimize their loss because "[i]t is too much to ask the court to recognize an injury based on a lost profit to which no one was lawfully entitled"); see also Arent v. Distribution Sciences, Inc., 975 F.2d 1370, 1374 (8th Cir. 1992) ("Plaintiffs argue that they would have sold their . . . stock had they known that the merger would not occur.  But if everyone had known this adverse fact, then the stock's value would have reflected the adversity.  Only if plaintiffs were the only ones [defendant] told, so that they could have improperly traded on inside information in dealing with third party purchasers, would disclosure have aided their investment fortunes."); Dloogatch v. Brincat, 920 N.E.2d 1161, 1171 (Ill. App. 2009) (ruling that holders of securities that had already declined in value by time of alleged misrepresentations could not allege causation because "plaintiffs could not have sold their stock at the artificially high price absent the fraud").

last purchased Lancelot shares on November 1, 2004, the Colorado Securities Act claim should be time-barred. In response, Agile argues that it made continued investments in Lancelot through 2008. Because there are <u>issues of fact</u> that must be decided by a jury, summary judgment based on the Act's limitations period is inappropriate at this time." (emphasis added; citations omitted)).) Indeed, Plaintiffs elsewhere have recognized this themselves. During the Final Pretrial Conference last month, after Charter One's counsel explained that ASVF's "last purchase was made in '04," and that there are "admissions both in the complaint and in those other discovery documents which we think establish as a matter of law that admission" (Tr. at 5:4-10), Plaintiffs' counsel said "there's an order of the court here saying it's an <u>issue of fact</u>" (Tr. at 5:24-25 (emphasis added); <u>see also</u> Opp. at 4 ("As Judge Martinez correctly held, [Mr. Greenberg's] sworn statements create an <u>issue of fact</u> precluding summary judgment." (emphasis added)).) Certainly, the May 31 Order nowhere says that claims based on continuing to hold already worthless securities are legally valid. To the contrary, it expressly states that ASVF "affirmatively alleges and has come forward with some evidence that after considerable deliberation it decided to retain its investments in Lancelot, <u>and to increase its financial stake in those funds</u>." (Dkt. 215 at 19 (emphasis added).) The Order <u>never</u> analyzes the holder doctrine independent of Plaintiffs' assertion that ASVF increased its investment in Lancelot.

The Opposition also argues that the supplemental discovery provided no new evidence; but the only supposed support Plaintiffs articulate for that conclusion is that similar arguments were presented to Judge Martinez last spring, and that Mr. Greenberg stood by his declaration during his supplemental deposition. (<u>See</u> Opp. at 3, 12-13, 17-19.) With respect to last spring's briefing and hearing, Plaintiffs conflate the concepts of arguments and evidence. Judge Martinez rejected Charter One's argument that ASVF made no new investments after

July 2007 based on the evidence that had emerged to that point.  That evidence included, in particular, the Greenberg Declaration, but it did not include any of the evidence clarifying the declaration that emerged during the supplemental discovery.  The Opposition wholly ignores that new, clarifying evidence (which was highlighted on pages 10-15 of Charter One's provisional Renewed Mot.).  That Mr. Greenberg continued to stand behind the far more general averments in his declaration obviously does not change the fact that other testimony from his supplemental deposition was entirely new.

Finally, the Opposition argues that the Motion for Leave should be denied based on Plaintiffs' pending objections to M.J. Boland's Order granting supplemental discovery.  (See Opp. at 5-6.)  Those objections should be overruled for all the reasons expressed in Charter One's brief in opposition to them (Dkt. No. 260), e.g., that M.J. Boland's Order did not overturn or conflict with any prior order of the Court, that he had full authority to reopen discovery, that the limited discovery granted was directly related to Plaintiffs' violation of an earlier discovery order, and that the supplemental discovery was necessary to reveal the truth -- as it has now done.  Indeed, the clarity the supplemental discovery has provided to the circumstances regarding the timing of ASVF's investments in Lancelot demonstrates conclusively that the supplemental discovery provided for in M.J. Boland's Order was entirely worthwhile and appropriate.

## Conclusion

The Federal Rules provide for summary judgment so that cases capable of resolution without adjudicating material factual disputes do not clog the court system, waste jurors' time, or drain the parties and courts of resources. When discovery -- whenever conducted -- demonstrates that a case, or portion of a case, fits within that category, it is ultimately in everyone's interest for summary judgment to be granted.  The supplemental discovery in this

case has shown that to be the situation here. Accordingly, Charter One respectfully requests that the Motion for Leave be granted so that this Court can fully consider the dispositive legal issues that entitle Charter One to judgment as a matter of law.

Dated:  January 17, 2012                                      Respectfully submitted,

/s/ Howard Schiffman
Howard Schiffman
Eric A. Bensky
Schulte Roth & Zabel LLP
1152 15th Street N.W., Suite 850
Washington, DC  20005
Telephone: (202) 729-7470
Facsimile: (202) 730-4520
E-Mail:  howard.schiffman@srz.com
E-Mail:  eric.bensky@srz.com
*Counsel for Defendant RBS Citizens, N.A.*

## Certificate of Service

I hereby certify that on this 17th day of January, 2012, I electronically filed the Reply Brief in Support of Motion for Leave to file RBS Citizens, N.A.'s Renewed Motion for Summary Judgment with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to each of the following:

| Plaintiffs' Attorneys: | Attorneys for Swiss Financial Services, Inc.: |
|---|---|
| Steven W. Thomas<br>Thomas, Alexander & Forrester LLP<br>14-27th Ave<br>Venice, CA 90291<br>steven.thomas@tafattorneys.com | Robert B. Christie<br>Henderson & Lyman<br>175 West Jackson Blvd, Suite 240<br>Chicago, IL 60604<br>rchristie@henderson-lyman.com |
| Steven M. Feder<br>Feder Law Firm<br>730 17th Street, Suite 550<br>Denver, CO 80202<br>steve@federlawfirm.com | Holly Stein Sollod<br>Brooke Harrison McCarthy<br>Holland & Hart LLP<br>555 17th Street, Suite 3200<br>Denver, CO 80202<br>hsteinsollod@hollandhart.com<br>bhmccarthy@hollandhart.com |

/s Eric A. Bensky
Howard Schiffman
Eric A. Bensky
Schulte Roth & Zabel LLP
1152 15th Street N.W., Suite 850
Washington, DC  20005
Telephone:  202-729-7470
E-Mail:  howard.schiffman@srz.com
E-Mail:  eric.bensky@srz.com

Counsel for Defendant RBS Citizens, N.A.