IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:09-cv-02786-RBJ-BNB

Agile Safety Variable Fund, L.P. and Sky Bell
Select LP,

      Plaintiffs,

v.

RBS Citizens, N.A. d/b/a Charter One Bank, et al.,

      Defendants.

---

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION IN LIMINE TO EXCLUDE INADMISSIBLE EVIDENCE
OF S.E.C. INVESTIGATION AND PROCEEDINGS

---

## I.    **INTRODUCTION**

Plaintiffs Agile Safety Variable Fund, L.P. and Sky Bell Select LP (collectively,

"Plaintiffs") respectfully move this Court, pursuant to Rules 401, 403, 404, 408, 801 and 802 of

the Federal Rules of Evidence, for an Order in advance of trial prohibiting Defendants from

introducing evidence concerning the Securities and Exchange Commission's ("S.E.C.'s")

investigation and settlement in *In the Matter of Agile Group, LLC*.

## II.    **PLAINTIFFS' CLAIMS**

Plaintiffs have three state law claims that this Court has held present issues of fact for

trial:  negligence, negligent misrepresentation and securities fraud.  Plaintiffs' claims are that

RBS Citizens, N.A. d/b/a Charter One Bank ("Charter One") and Swiss Financial Services, Inc.

("Swiss Financial") failed to do their jobs, and then lied to Plaintiffs about it.  Plaintiffs' losses

were proximately caused by Defendants' failure to do their job, and Plaintiffs invested,

reinvested and retained their investments as a result of Defendants' negligent misrepresentations and violations of Colorado securities laws.

**Plaintiffs**.  Plaintiffs are investment funds.  Individuals invest in Plaintiffs who in turn investment that money in other funds.  Plaintiff Agile Variable no longer operates and investors now run Agile Variable.  Those investors are Colorado retirees, many of whom lost their retirement savings.  Plaintiff Sky Bell also no longer operates.  The principal who still manages Sky Bell, who also is an investor, is Gary Marks.

**Plaintiffs' investments in this case**.  Plaintiffs invested in, among other things, Lancelot Investors Fund, L.P. and Lancelot Investors Fund II, L.P. (collectively, "Lancelot").  Lancelot purported to be a fund that provided short term financing to transactions brokered by Thomas Petters, which purported to sell excess electronic inventory at a discount to large wholesale retailers, such as Costco.  In fact, the transactions were fake, although the money—including the money invested by Plaintiffs—was real.  Lancelot had significant real estate holdings and Petters owned, at various times, Polaroid Corporation.

**Defendants**.  Defendants are Charter One, a subsidiary of The Royal Bank of Scotland, and Swiss Financial, a division of Swiss Financial Services Holding AG.

**Defendant Charter One's Role in the Transactions**.  All the real money for Lancelot's fake transactions flowed through accounts at defendant Charter One bank, because Charter One demanded that all of Lancelot's accounts be at Charter One.  As a result, Lancelot was one of Charter One's biggest clients.  Declaration of Steven W. Thomas in Support of Motion in Limine to Exclude Inadmissible Evidence of S.E.C. Investigation and Proceedings, (hereinafter, "Thomas Decl."), Exh. A (Plaintiffs' Trial Exh. 126 Excerpts) at 215.

1

Charter One failed to do its job in several, significant ways. That the transactions were fake was demonstrated by the money movement in the Lancelot bank accounts that Charter One oversaw—Charter One knew that money for the transactions was supposed to be wired directly from Costco, but no such wires ever occurred. Thomas Decl. Exh. B (Defendants' Trial Exh. B53). Instead Charter One repeatedly accepted wires from the fraudsters, entities related to Thomas Petters. *Id*. Charter One either did not look or ignored the evidence as it continued to collect millions of dollars in fees from one of its largest banking clients. Thomas Decl. Exh. A at 216, 219, 247-249. As Charter One admitted after the fraud was discovered, there "textbook warning signs" that should have been red flags to Charter One that the transactions were fake. *Id.* at 250. Charter One further failed to follow its own policies and procedures which would have caused it to discover the fraud.

In addition, Charter One's own bank examiners repeatedly warned their superiors at Charter One to verify that the transactions were real, but those warnings were overruled by senior management. Specifically, Charter One examiners advised it was necessary to check the collateral and shipping documents to be sure the electronic goods were actually shipped to Costco and other big box retailers. Thomas Decl. Exhs. C (Plaintiffs' Trial Exhibit 10); D (Plaintiffs' Trial Exhibit 11); E (Plaintiffs' Trial Exhibit 12); and F (Plaintiffs' Trial Exhibit 13). Although Charter One's normal policy was to do so, senior management at Charter One refused, explaining that Charter One obtained Lancelot's business by promising to be less burdensome than Lancelot's prior bank. Thomas Decl. Exh. D at 1. Charter One's own bank examiners knew this violated Charter One's procedures, and in each subsequent examination report wrote ***in bold and italics*** that Charter One should check the shipping documents, but senior management at Charter One always declined. Thomas Decl. Exh. D at 3; Exh. E at 5; Exh. F at

4-5.  Because the transactions were fake and no electronics had in fact ever been shipped, if

Charter One had done its job, the fraud would have been revealed.

**Defendant Charter One's Misrepresentations to Plaintiffs**.  Charter One compounded

its gross negligence by lying about it to Plaintiffs.  Despite Charter One's conscious, repeated

rejection of its own employees' written recommendation—in bold and italics—to do asset-based

due diligence and verify shipping documents, Charter One told Plaintiffs it *was doing* "asset-

based" due diligence.  Thomas Decl. Exh. G (Plaintiffs' Trial Exhibit 597).  This was a direct

misrepresentation to Plaintiffs, constituting at least a negligent misrepresentation and a violation

of Colorado's securities laws.  Charter One's comments were taken down in contemporaneous,

written notes by Plaintiffs.  *Id*.

Moreover, Charter One misrepresented that "[t]hey … tie it back to the books and records

by following the cash through all the various accounts."  Thomas Decl. Exh. A at 133.  Either

this is a direct misrepresentation or confirms Charter One's gross negligence—*all* the money was

running through Lancelot's accounts at Charter One and thus if Charter One was monitoring the

accounts the way it told Plaintiffs it was, the red flag of *no wires* from Costco to pay for the

electronic goods would have been discovered immediately and the fraud and Plaintiffs' losses

prevented.

**Defendant Swiss Financial's Role in the Transactions**.  Swiss Financial began running

the books of Lancelot in 2003, so much so that the financial audits of Lancelot took place at

Swiss Financial, not Lancelot.  Swiss Financial was not only "responsible for the maintenance of

[Lancelot's] books and records" but for communications with Plaintiffs, the "preparation and

distribution of periodic performance reports of [Lancelot]," and "calculating the Net Asset Value

of the Fund and its Units."  Thomas Decl. Exh. H (Plaintiffs' Trial Exhs. 519 & 571) (Lancelot

Confidential Memoranda).  Swiss Financial told Plaintiffs it had "transparency" into all

Lancelot's bank accounts and transactions, including on-line access.  Thomas Decl. Exh. I

(Plaintiffs' Trial Exh. 102) at 1.

Swiss Financial's involvement in Lancelot's business was pervasive.  Swiss Financial

controlled Lancelot's offshore entity, Lancelot Investors Fund Ltd., holding two of the three

board of director seats.  Swiss Financial then ran the books for the Lancelot offshore entity as

well.  Thomas Decl. Exh. H.

**Defendant Swiss Financial's Misrepresentations to Plaintiffs**.  Swiss Financial

vouched for Greg Bell, who ran Lancelot, promising that he was of good character.  Thomas

Decl. Exh. J (Plaintiffs' Trial Exh. 103).  Swiss Financial stated that they had done "extensive

due diligence," but in fact they had not.  Thomas Decl. Exh. I.

Swiss Financial's cheerleading for Lancelot knew little bounds.  Swiss Financial

promised Plaintiffs that there was "no funny money movement."  *Id*.  This was absolutely false.

All the money movement was "funny"—the transactions were all fake.

**Plaintiffs' Negligence Claims**.  Charter One and Swiss Financial violated the standard of

care of a reasonable person in doing their jobs, and this failure proximately caused Plaintiffs'

losses.  As this Court already held, Charter One and Swiss Financial owed Plaintiffs a duty

because they chose to assure Plaintiffs that they were doing their jobs correctly and vouch for the

legitimacy of Lancelot.

**Plaintiffs' Negligent Misrepresentation Claims**.  Charter One and Swiss Financial

made materially, false statements to Plaintiffs that they knew or should have known were false

on which Plaintiffs justifiably relied.  Charter One and Swiss Financial both admit that they

knew Plaintiffs were investors and that Plaintiffs were speaking to them for that purpose.

**Plaintiffs' Colorado Securities Law Claims**.  Charter One and Swiss Financial made materially false statements to Plaintiffs that they knew or were reckless in not knowing were false on which Plaintiffs relied.  The Court already has held that these statements were made in connection with the sale of securities.  *See* 5/31/11 Order.

## III.   THE FACTS CONCERNING THE S.E.C. INVESTIGATION AND SETTLEMENT

The S.E.C. conducted an investigation and subsequently filed an Order Instituting Proceedings ("OIP") against Neal R. Greenberg, who was a principal of Agile Group, the general partner of Plaintiff Agile Safety Variable Fund, L.P., and other funds.  The OIP alleged that Greenberg made misrepresentations and omissions concerning the diversification, liquidity and risks of the Agile funds.  The OIP does not discuss Plaintiffs' investments in Lancelot—the investment at issue here—except to note that the certain Agile related funds were heavily invested in Lancelot and another fund that lost money due to the Petters' scheme, and were not as diversified as Greenberg had represented.  *See* Thomas Decl. Exh. K (Defendants' Trial Exh. D8) (OIP).

Greenberg settled the matter without admitting any liability.  On February 10, 2011, the district court in Colorado entered a final judgment enjoining him from violations and ordering disgorgement of almost $4 million.  Significantly, Greenberg consented to the entry of a final judgment without admitting or denying the S.E.C.'s allegations.  *See* Thomas Decl. Exh. L (Defendants' Trial Exh. B77) (Litigation Release).

Defendants have designated approximately fifteen exhibits that relate to the S.E.C.'s investigation in *In the Matter of Agile Group, LLC*.  The documents consist of: (a) transcripts of testimony given to the S.E.C. by Neal Greenberg and Gary Marks, as well as ten other individuals who previously worked for or with Greenberg or one of the entities related to Agile

Group LLC (*see* Thomas Decl. Exh. M (Defendants' Exh. D7 and Exhs. B92-B99, C1-C3)); (b) the OIP against Greenberg (*see* Thomas Decl. Exh. K); and (c) the S.E.C. Litigation Release announcing the entry of a civil judgment against Neal Greenberg (*see* Thomas Decl. Exh. L).

## IV.   ARGUMENT

### A.   The Evidence Concerning the Investigation Is Inadmissible.

#### 1.   The Evidence Is Inadmissible Under Rule 404.

Even if the evidence concerning the S.E.C. investigation and settlement did not constitute inadmissible hearsay, it should be excluded under Rule 404(b), which prohibits admission of evidence of a crime or wrong "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Courts have applied Rule 404 to exclude evidence of settlement agreements with the S.E.C. where—as here—the matter was settled without the defendant admitting fault. *See, e.g., Kramas v. Security Gas & Oil Inc.*, 672 F.2d 766, 772 (9th Cir. 1982) (affirming court's decision to exclude evidence of consent decree from prior SEC enforcement proceeding under Rule 404(b)); *In re Adler, Coleman Clearing Corp.*, 1998 WL 160036, at *8 (Bankr. S.D.N.Y. Apr. 3, 1998) ("[a] consent decree expressly disclaiming guilt or liability is inadmissible as evidence of prior fraudulent or improper acts under Rule 404(b)," and documents reflecting such a settlement "cannot be admitted to show that [defendants] actually engaged in the conduct alleged").

#### 2.   The Evidence Is Inadmissible Under Rule 408.

Moreover, the evidence concerning Greenberg's settlement is inadmissible under Rule 408, which prohibits evidence of "(1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and (2) conduct or a statement made during compromise negotiations about the claim …" in order to prove or disprove a claim. Fed. R. Evid. 408(a). Thus, in *In re*

6

*Blech Secs. Litig.*, 2003 WL 1610775, at *11 (S.D.N.Y. Mar. 26, 2003), the court found that an

S.E.C. judgment such as the one at issue here, where the defendant consented to its entry without

admitting or denying the S.E.C.'s allegations, was inadmissible under 408. Numerous courts

have held similarly. *See, e.g., In re Cenco Inc. Secs. Litig.,* 601 F. Supp. 336, 337 n. 3 (D.C. Ill.

1984) (S.E.C.'s Accounting Series Release No. 196, was "analogous to a consent decree, issued

by the S.E.C. as a product of a settlement with [defendant] in which [defendant] did not admit or

deny any of its statements," and thus inadmissible under Fed. R. Evid. 408").

### 3. The Evidence Is Inadmissible Hearsay under Rules 801 and 802.

Furthermore, the large majority of the evidence Defendants seek to admit is inadmissible

hearsay. As courts have recognized, transcripts of S.E.C. testimony by a non-party constitute

inadmissible hearsay. *See, e.g., S.E.C. v. Shainberg*, 316 Fed. Appx. 1, at 3, 2008 WL 749561, at

*1 (2d Cir. 2008) (Table) (court properly excluded S.E.C. testimony of a witness affiliated with

defendant as "testimony was given outside of trial and was being introduced by the defendants to

establish the truth of the matter asserted therein"). While Rule 801(d)(2) allows admission of

statements offered against an opposing party if the statement was "made by the party's agent or

employee on a matter within the scope of that relationship and while it existed," Fed. R. Evid.

801(d)(2)(D), it does not apply to former employees. *See, e.g., Trujillo v. Board of Educ. of

Albuquerque Public Schools*, 2007 WL 2363156, at *3 (D.N.M. June 28, 2007) (former

employee's deposition was not admission because "at the time the June 2007 deposition was

taken, [deponent] was no longer a [defendant] employee, so his statements…do not qualify as

admissible 'admissions by a party-opponent['s]' agent 'made during the existence of the

relationship'") (citing Fed. R. Evid. 801(d)(2)(D)); *Marcic v. Reinauer Transp. Companies*, 397

F.3d 120, 129 (2d Cir. 2005) (party seeking to introduce employee testimony as corporate

admission "must lay a sufficient foundation by establishing '(1) the existence of the agency

7

relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency.'") (citation omitted).  With the possible exception of Neal Greenberg and Gary Marks, all of the witnesses whose testimony was designated by Defendants were no longer employed by Plaintiffs when they testified before the S.E.C.

The OIP is also hearsay, as is the Litigation Release.  *See, e.g., In re Blech Secs. Litig.*, 2003 WL 1610775, at *11 (S.D.N.Y. Mar. 26, 2003) (S.E.C. complaint was inadmissible hearsay, excluded under 801, 802 and 803 as it "is not evidence of anything other than the existence of an accusation.") (citation omitted); *In re WorldCom, Inc. Secs. Litig.*, 2005 WL 375315, at *9 (S.D.N.Y Feb. 17, 2005) (indictments are hearsay "since the only purpose is to offer the documents for the truth of the statements contained in them"); *U.S. v. Wheeler*, 1996 WL 155139, at *3 (9th Cir. Apr. 2, 1996) (Table) (S.E.C. civil consent decree is inadmissible hearsay).[1]

No exceptions to the rule against hearsay apply.  Plaintiffs did not attend the deposition and did not have an opportunity to cross-examine.  The S.E.C. testimony cannot be admitted as former testimony under Rule 804(b), as it requires that declarant be unavailable as a witness, and "allows such former testimony only if the party against whom the testimony is offered 'had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.'"  *Shainberg*, 316 Fed. Appx. at 3 (excluding S.E.C. testimony of witness affiliated with defendant).  These requirements cannot be satisfied here.

---

[1] Defendants have also designated as exhibits numerous other complaints and pleadings that are obviously hearsay and inadmissible.  *See* Defendants' Trial Exhibits B70-72, B82-B88, B89, D14, D16-17, D19-20, D22, D24, D26, D30, D38 and E42-44.  Plaintiffs are hopeful that Defendants will withdraw these exhibits as part of the Court's order that the parties reduce the exhibit list.

**B.** **Even if Admissible, Evidence of the Investigation and Settlement with the S.E.C. Should Be Excluded under Rules 401 and 403.**

Even if evidence concerning the S.E.C. investigation and settlement were admissible, it should be excluded because its minimal probative value is substantially outweighed by the risk of undue prejudice and confusion. The District of Colorado excluded evidence of an S.E.C. settlement on precisely these grounds. *See F.D.I.C. v. Refco Group, Ltd.*, 184 F.R.D. 623, 628 (D. Colo. 1999). In *Refco*, the court excluded evidence related to the defendant's settlements of disputes with the S.E.C. and the Commodity Futures Trading Commission. The court granted the requesting finding "prejudice and jury confusion to be overriding factors in that the jury would be likely to infer wrongdoing by Refco from settlement terms." *Id.*

Similarly high risks of prejudice and jury confusion counsel in favor of exclusion here. Here, the jury would infer wrongdoing by Agile and Sky Bell based on the investigation and settlement, and would be prejudiced against them. Further, the jury might incorrectly assume that the S.E.C. investigation goes to the merit of Plaintiffs' claims, *i.e.*, whether Defendants made actionable misrepresentations.

Like *In re Refco*, other courts have excluded evidence of investigations and settlements when their minimal probative value is outweighed by the risk of undue prejudice and confusion. *See e.g., Kreidler v. Pixler*, 2010 WL 1537012, at *2 (W.D. Wash. Apr. 15, 2010) (excluding evidence and testimony of S.E.C. investigation that resulted in defendant consenting to entry of judgment, because "minimal showing of relevancy," outweighed by risk of undue prejudice and potential confusion for jury); *Crawford v. Muscletech Research & Development, Inc*., 2002 WL 31852835, at *1 (W.D. Okla. Oct. 10, 2002) (applying Rule 403 to exclude evidence concerning consent decrees that defendants entered into with Federal Trade Commission; "even if the court found the consent decrees relevant, their use would unreasonably lengthen the trial, thus pursuant

to Fed. R. Evid. 403, they are inadmissible"); *Kramas,* 672 F.2d at 772 (excluding S.E.C. consent

decree under Rule 408 and Rule 403); *Firemen's Fund Ins. Co. v. Thien,* 63 F.3d 754, 759 (8th

Cir. 1995) (excluding Federal Aviation Administration investigation into accident because issue

in case was insurance coverage, and admission of FAA investigation evidence would prejudice

jury and "would lead to extended, and irrelevant, litigation of the question of…liability, and thus

would confuse the jury and waste their time and the court's").

## CONCLUSION

Accordingly, for the reasons stated above, Plaintiffs respectfully request that the Court

enter an order prohibiting Defendants from introducing any evidence concerning the S.E.C.'s

investigation and settlement in *In re Agile Group LLC*, including Defendants' Exhibits B77,

B92-B99, C1-C3, and D7, D8.

Dated:  March 19, 2012                       Respectfully submitted,

    */s/ Steven W. Thomas*
Steven W. Thomas
Emily Alexander
THOMAS ALEXANDER & FORRESTER LLP
14 27th Avenue
Venice, California 90291
Telephone:    (310) 961-2536
Facsimile:    (310) 526-6852

Steven M. Feder
FEDER LAW FIRM
730 17th Street, Suite 550
Denver, Colorado  80202
Telephone:  (303) 261-8798
Facsimile:   (303) 221-7357

*Attorneys for Agile Safety Variable Fund, L.P. and Sky*
*Bell Select L.P.*