IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:09-cv-02786- RBJ-BNB

Agile Safety Variable Fund, L.P. and Sky Bell
Select LP,

    Plaintiffs,

v.

RBS Citizens, N.A. d/b/a Charter One Bank, et
al.,

    Defendants.

## PLAINTIFFS' OPPOSITION TO RBS CITIZENS, N.A.'S MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF EXPERT WITNESS RICHARD T. MCINTOSH

Plaintiffs Agile Safety Variable Fund, L.P. ("Agile Variable") and Sky Bell Select LP ("Sky Bell") (collectively, "Plaintiffs") here oppose Defendant RBS Citizens, N.A.'s ("Defendant" or "Charter One")'s Motion in Limine ("Motion") to exclude the testimony of Plaintiffs' expert witness Richard T. McIntosh filed by Defendant RBS Citizens, N.A. d/b/a Charter One Bank ("Defendant" or "Charter One").

## **INTRODUCTION**

Charter One's instant Motion to exclude any testimony from Plaintiffs' only expert concerning Charter One is based on the same grounds as its Motion to Exclude Evidence and Testimony regarding Charter One's Policies, Procedures and Field Exams ("Defendant's Policy Motion"). *See* Dkt. 294-295. This Motion therefore fails initially for the same reasons.

Defendant's Motions depend on a description of Plaintiffs' state-law claims that is contrary to the claims themselves, as specifically recognized and described by this Court on summary judgment. Charter One would excise from the case that its own field examiners repeatedly warned Charter One to do asset-based due diligence to verify that the transactions at issue were real, as well as Charter One's senior management's *rejection* of their own field examiners' advice. But this is part of the core evidence that proves both that Charter One's statements were false—Charter One told Plaintiffs it *was* doing asset based due diligence—and proves that Charter One either negligently or intentionally made the misstatement to Plaintiffs.

In fact, in the two paragraphs this Court used to summarize Plaintiffs' claims in denying summary judgment as to all three of Plaintiffs' claims, the second paragraph specifically discussed the very evidence Charter One now seeks to exclude:

> Charter One recruited Lancelot by promising to decrease the administrative burden and oversight of Lancelot as compared to its previous lender. In decreasing the oversight, Plaintiffs allege, Charter One failed to follow up on warnings from field examiners

1

> who repeatedly warned Charter One's senior management to verify whether the underlying transactions were real.

Dkt. 215 (Opinion and Order on Motions to Dismiss and for Summary Judgment) (the "SJ Order") at 3.

In addition, Charter One ignores that proof of its failure to follow its own policies and procedures proves a necessary element of each of Plaintiffs' claims. Plaintiffs must prove that Charter One acted below the standard of care (negligence), that Charter One "failed to exercise reasonable care or competence in supplying the information," SJ Order at 16, or that Charter One acted with "the requisite scienter," which includes recklessness. *Id.* at 18. Charter One's failure to follow its own procedures tends to prove each of these elements. For example, Charter One's own procedures said it was supposed to check the shipping documents to confirm whether the transaction was real, but Charter One violated its procedures and did not. Moreover, all of the cash for all the fake transactions flowed through Charter One, and Charter One saw that the payment for the transactions was coming from a Petters entity rather than from a retailer, like Costco. *See* Dkt. 299 (Thomas Declaration In Support of Motion in Limine) Exh. B (Defs' Trial Exh. B53). This should have been a red flag, but Charter One did nothing.

These violations of Charter One's own policies and procedures demonstrate that Charter One "failed to exercise reasonable care or competence in supplying the information" to Plaintiffs, violated the standard of care, and acted recklessly. Such relevant evidence cannot be excluded under the law. *See, e.g., Therrien v. Target Corp.*, 617 F.3d 1242, 1256 (10th Cir. 2010); *Clayton Brokerage Co. of St. Louis, Inc.* 737 P.2d 1106, 1110 (Colo. 1987). Expert testimony by Mr. McIntosh is therefore relevant.

The Motion should be denied for the following additional reasons:

*First*, this Court has already considered—and rejected—Charter One's arguments to

2

exclude Mr. McIntosh's testimony when Judge Martinez denied Charter One's Motion to Strike Mr. McIntosh's Declaration ("Declaration" or "Decl.") on the exact issues Charter One now says he is incompetent to testify.  *Second*, Mr. McIntosh's career-long experience in commercial lending qualifies him to opine on the significance and adequacy of the due diligence Charter One allegedly conducted on its own behalf.  All of Mr. McIntosh's opinions are supported and were adequately disclosed in the expert report he submitted in accordance with Rule 26(A)(2)(B) ("Expert Report" or "Rpt.").  *Third*, and regardless of Charter One's *actual* conduct of due diligence, Mr. McIntosh is certainly qualified to testify regarding the propriety, significance and influence that statements made by a commercial lender like Charter One could reasonably have on investors.  His banking background is precisely what qualifies him to express an opinion on the reasonableness of such reliance.

Accordingly, the Motion should be denied.

## BACKGROUND

### A.  This Case

To avoid duplication, Plaintiffs incorporate by reference the description of the case and claims contained in Plaintiffs' Opposition to Defendants' Policy Motion.

### B.  Charter One's Previous Motion to Exclude Mr. McIntosh's Testimony is Denied.

As Charter One concedes in a footnote, Charter One had previously sought to exclude the exact same testimony by Mr. McIntosh when it filed a Motion to the Strike the McIntosh Declaration.  The McIntosh Declaration was submitted by Plaintiffs in opposition to Defendant's motion for summary judgment, and included the Expert Report as an attachment.

In that motion to strike, Charter One argued, as it does now that:  Mr. McIntosh was not qualified to opine on the issues in his Declaration, including causation or the customs and practices of portfolio managers (*see* Dkt. 188 at 5); Mr. McIntosh's opinions regarding whether

Charter One should have uncovered the fraud are not relevant to causation (*see id.* at 64-65) (asserting that Expert Report's "statements that Charter One should have uncovered the fraud," do not speak to "how that could have possibly caused the losses"); Mr. McIntosh proffered "impermissible legal conclusions"; and the McIntosh Declaration set forth expert opinions that were not adequately disclosed in the Expert Report as required by Federal Rule of Civil Procedure 26(a). *See, e.g.,* Dkt. 188 at 3-4; Dkt. 264-1 at 65-66.[1]

This Court denied the motion, holding that Charter One's arguments "go more to the weight the Court should attribute to the declarations and not the fact they should be stricken and not considered under Rule 56." Dkt. 264-1, at 74. The Court expressly ruled that it would "take these declarations into account when it considers the amended motion for summary judgment." *Id.* Accordingly, Judge Martinez expressly held that the McIntosh Declaration, including the Expert Report, were admissible under Rule 56 of the Federal Rules of Civil Procedure.

## ARGUMENT

### I. THE COURT HAS ALREADY DECIDED THAT MR. MCINTOSH IS QUALIFIED TO TESTIFY AND HIS TESTIMONY IS ADMISSIBLE.

In deciding whether to strike or admit an expert affidavit submitted in connection with a motion for summary judgment, the court first must decide whether the expert opinion is admissible at trial. *See Milne v. USA Cycling, Inc.*, 575 F.3d 1120, 1134 (10th Cir. 2009); *Bryant v. Farmers Ins. Exchange,* 432 F.3d 1114, 1122 (10th Cir. 2005) (the contents of an affidavit admissible under Rule 56 must be evidence admissible at trial); *Thomas v. International*

---

[1] Charter One echoed these arguments orally. At the hearing on the Motion to Strike, Charter One's counsel argued, for example, that Mr. McIntosh's qualifications "don't speak to having any experience in investing, in portfolio management…[or] to expertise in causation or lost [*sic*] causation…" and argued that Plaintiffs had not explained "how the banking expert is qualified to testify as to the customs and practices of portfolio managers." *See* Dkt. 264-1 at 63-64.

4

*Business Machines,* 48 F.3d 478, 485 (10th Cir. 1995) (same).[2] A court ruling on a motion to strike an expert affidavit on summary judgment must first determine "whether the expert's opinion would be admissible at trial," and therefore must consider "whether the person is competent to testify as an expert; whether such testimony would be helpful or assist the trier of fact in its determination or understanding of relevant issues; and whether the facts or data upon which the expert bases his opinion are the types of facts or data reasonably relied upon by experts in the particular field in forming opinions on the subject." *City of Chanute, Kan. v. Williams Natural Gas Co.*, 743 F. Supp. 1437, 1444-1445 (D. Kan. 1990). *See also, Milne*, 575 F.3d at 1134.

      Similarly, a court would not admit an expert affidavit on summary judgment if it found that its contents improperly extended beyond the scope of his expert report. *See, e.g., Reed v. Smith & Nephew, Inc.*, 527 F. Supp.2d 1336, 1349 (W.D. Okla. 2007) (considering whether expert affidavit extends beyond scope of expert report when deciding motion to strike affidavit submitted in connection with summary judgment). This is because the Court must perform a gatekeeper function, and determine the admissibility of an expert's opinion at trial *before* considering an expert affidavit in deciding a motion for summary judgment. *See, e.g., Process Pipe Fabricators, Inc. v. U.S.,* 2007 WL 1731765, 9 n. 7 (N.D. Okla. June 14, 2007) (considering objections to expert affidavit filed in connection with summary judgment motion, and noting "[w]ith or without an objection…the Court must fulfill its role as gatekeeper before considering expert testimony under *Daubert*").

---

[2] Charter One acknowledges that *Milne* sets the standard for determining whether an expert is qualified to testify under Federal Rule of Evidence 702 (*see* Motion in Limine at 4), but does not acknowledge that *Milne* involved precisely the situation Judge Martinez faced here: a defendant moving to strike the plaintiff's expert's affidavit filed in opposition to a motion for summary judgment. *Milne* makes clear that the admissibility of an expert's testimony is determined *before* the admission of the expert's affidavit on summary judgment.

Thus, the exact issues Charter One raises now were ruled upon when it argued them to the Court the first time, including relevance, whether the testimony in the affidavit exceeded the expert report, and Mr. McIntosh's competency to testify. *See City of Chanute, Kan.*, 743 F. Supp. at 1444-45; *see also Milne*, 575 F.3d at 1134; *Reed v. Smith & Nephew, Inc.*, 527 F. Supp.2d at 1349.

Indeed, the fact that Judge Martinez considered—and rejected—Charter One's arguments concerning Mr. McIntosh's qualifications and the admissibility of his testimony is evident in that Charter One's Motion to Strike raised precisely the same challenges that it raises in the instant Motion in Limine. *See* Dkt. 188 at 3-5. Judge Martinez rejected these and all of Charter One's arguments, finding that they went "more to the weight the Court should attribute to the declarations and not the fact they should be stricken and not considered under Rule 56." *See* Dkt. 264-1, at 74. Judge Martinez then held he *would* and *could* consider the McIntosh affidavit on summary judgment: "The Court will take these declarations into account when it considers the amended motion for summary judgment." *Id.* at 75.

## II. EVEN IF THE COURT HAD NOT ALREADY CONSIDERED AND REJECTED CHARTER ONE'S ARGUMENTS, IT SHOULD DENY THE MOTION IN LIMINE.

### A. Mr. McIntosh May Testify Concerning the Statements Made in His Declaration.

#### 1. Mr. McIntosh is Qualified to Testify to these Statements.

There are additional grounds to deny the Motion. First, Mr. McIntosh is clearly qualified to testify regarding the contents of his Declaration. Charter One does not dispute that Mr. McIntosh has career-long experience in commercial lending, including working in asset based finance, mergers, and credit and loans to commercial institutions and individual borrowers. This experience and expertise in commercial banking qualifies Mr. McIntosh to speak about the

6

propriety, significance and influence that statements made by a commercial lender could have on investors. Indeed, courts have allowed commercial lenders to testify as experts about a wide range of topics where their specialized knowledge could assist the trier of fact. *See, e.g., Amco Ukrservice & Prompriladamco v. American Meter Co*, 2005 WL 1541029, at *7 (E.D. Pa. June 29, 2005) (expert with international commercial lending experience can opine on reasonableness of party to joint venture agreement to request assurances from co-party); *Wells Fargo Bank. N.A. v. LaSalle Bank Nat'l Ass'n*, 2011 WL 743929, at *2 (D. Nev. Feb. 23, 2011) (admitting testimony of commercial lending expert, and finding that his alleged lack of specialization in commercial mortgage backed securities loans "affects the weight of the expert's testimony, not its admissibility") (quotations and citations omitted).

Mr. McIntosh's multi-year experience and expertise in commercial lending distinguishes him from the experts in the two cases Charter One cites—*Milne*, 575 F.3d at 1134 and *Curtis v. State Farm Mut. Auto. Ins. Co.*, 621 F. Supp. 2d 1122, 1126-27 (D. Colo. 2008). In both *Milne* and *Curtis*, the affiants had *no* relevant expertise in the areas in which they opined. Indeed, in *Curtis*, the affiants were opining on defendant insurer's consideration of plaintiff's pre-existing medical condition despite having no medical experience or expertise.

### 2. The Statements in the Declaration Are Not "Conclusory" and Were Properly Disclosed in his Expert Report.

Charter One's argument that the opinions in Mr. McIntosh's Declaration are "conclusory," and were not disclosed in his Expert Report lacks merit. As expressly stated in the Declaration, Mr. McIntosh's findings are "described in detail in [his] [E]xpert [R]eport." *See* Dkt. 293-4 (Bensky Declaration in Support of Motion in Limine) Exh. 4 (McIntosh Decl.)) ¶ 2. Indeed, the statements in the Declaration come directly from the Expert Report that accompanied the McIntosh Declaration. For example, the McIntosh Declaration's statement that Charter One

knew of "specific problems that would have been material to any potential investors," (McIntosh Decl. ¶ 2) is expressly stated in the Expert Report. *See* Dkt. 293-2 (Bensky Declaration In Support of Motion in Limine) Exh. 2 (McIntosh Rpt.) at 2 ("As a result of its negligence, Charter One did not have a reasonable basis for making those positive representations to Agile and in fact knew of specific problems that would have been material to any potential investor that it did not disclose to Agile"). The Expert Report then sets forth those specific problems in detail.

Similarly, the Declaration's statement that Charter One could have uncovered the fraud and thus "could have stopped Plaintiff's massive losses at any time," (McIntosh Decl. ¶ 3), and the statement that "Plaintiffs' losses on [the Lancelot] investments are directly attributable to Charter One's actions," (*id.* ¶ 7) are fully supported in the Expert Report where Mr. McIntosh details the ways in which Charter One could have—but negligently failed to—uncover Lancelot's fraud. *See, e.g.*, McIntosh Rpt. at 2 (Charter One "either had or should have had knowledge of material problems with Lancelot's operations that should have led Charter One to take additional steps that would have revealed that Lancelot was part of a massive fraud"); *id.* at 5 (detailing missteps in approving and administering loans, and stating that in light of these missteps, "Charter One played a key role in the Lancelot…fraud" and perpetuated the deception); *id.* ("Charter One had a direct window onto the fraud, yet failed to detect it").

Furthermore, Mr. McIntosh's statements concerning the significance of Charter One's representations to a reasonable investor, and specifically to Plaintiffs (*see* McIntosh Decl. ¶ 6), are supported by the Expert Report's detailed discussion of how extraordinary—and improper— those representations were. *See* McIntosh Rpt. at 29-33 (discussing how Charter One's volunteering confidential, "highly positive," and incorrect information to Agile was

8

"exceptionally unusual and certainly not a prudent banking practice").

Charter One cites *Warren v. Tastove*, 240 Fed. Appx. 771, 773 (10th Cir. 2007), but there the court excluded the testimony of a medical doctor who had not testified to "a reasonable degree of medical certainty based on specified medical grounds." Even Charter One does not dispute that Mr. McIntosh's opinions are certain and unequivocal. Thus, *Warren* has no bearing here.

Moreover, Charter One chose not to depose Mr. McIntosh. Charter One's strategic decision to not ask Mr. McIntosh about his opinion cannot narrow it at trial to the prejudice of Plaintiffs' only expert on these issues.

### B. The Statements in Mr. McIntosh's Expert Report Are Relevant and Otherwise Admissible.

To the extent Charter One would not limit the trial to the elements of Plaintiffs' claims and its affirmative defenses, Mr. McIntosh's statements concerning Charter One's deviation from the standard of care in approving and administering its loans to Lancelot are highly relevant, as they go directly to Charter One's negligence and recklessness, various elements of all three of Plaintiffs' claims. *See* Opposition to Policy Motion.

The Colorado Supreme Court and the Tenth Circuit has recognized that whether a party adhered to its own internal policies or industry standards is relevant to showing negligence or intent. *See, e.g., Therrien v. Target Corp.*, 617 F.3d 1242, 1256 (10th Cir. 2010) (company's internal policies admissible to show negligence); *Cook v. Rockwell Intern. Corp.*, 580 F.Supp.2d 1071, 1177 (D. Colo. 2006) (defendant's compliance with regulatory standards relevant to showing negligence).

To the extent that Charter One asserts that its failure to adhere to commercial banking standards is not relevant to Plaintiffs' losses, its argument is misguided. As made clear in Mr.

McIntosh's Expert Report, Charter One's failure to adhere to commercial banking standards directly resulted in Charter One' misrepresentations that resulted in Plaintiffs' losses.[3] *See, e.g.,* McIntosh Report at 12-13 (discussing normal banking practice of considering and heeding recommendations by loan examiners to require proof of merchandise shipments, and noting that "Charter One should absolutely have avoided making the inaccurate and positive representations that it did to Agile" by obtaining such independent verifications); *id.* at 33 ("Charter One knew, or should have known, specific reasons that its highly positive representations about Lancelot were misleading"). Indeed, as Mr. McIntosh opines, Charter One making any confidential representations to Agile greatly deviates from standard banking practices. *See, e.g., id.* at 32 ("Such expression by a bank to a leveraged fund investing in notes subordinate to the respondent bank exposure is exceptionally unusual and certainly not a prudent banking practice"); *id.* ("In no circumstances, except under subpoena, or in response to regulators, should a bank publicly share its confidential, internal work product").

Mr. McIntosh's opinions on the standard of care typically applied by commercial lenders such as Charter One—and his explanation of how Charter One failed to adhere to that standard—will obviously assist the trier of fact in deciding whether Charter One breached its duty of care or acted with requisite intent. *See, e.g., Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913, 929 (Colo. 1997) (expert testimony required when standard of care is not within the common knowledge and experience of ordinary persons). Mr. McIntosh's statements are thus admissible under Federal Rule of Evidence 702(a).

Charter One's argument that Mr. McIntosh should not be allowed to testify because he

---

[3] For this reason, as explained in Plaintiffs' separately filed opposition, Charter One's simultaneously filed Motion in Limine to Exclude Evidence of and Testimony of Charter One's Policies, Procedures, and Field Exams (Dkt. 294-295) also fails.

plans to state "bare legal conclusions" is also unavailing.  Mr. McIntosh's detailed opinions, discussed above, are not legal conclusions.  Moreover, Plaintiffs are confident that the Court's extensive trial experience can deal with any issues as to all the experts if testimony stretches to bare legal conclusions.  *See, e.g., Home Design Services, Inc. v. Trumble*, 2011 WL 1638910, at *5 (D. Colo. Apr. 29, 2011) (Daniels, J.) (admitting two expert reports with limitation that "neither expert may provide legal opinions on the ultimate issues in this case…Their testimony may embrace the ultimate issues, consistent with Fed. R. Evid. 704, but may not go further").

Charter One's final argument—that Mr. McIntosh impermissibly relies on hearsay in the form of a civil complaint filed by the Securities and Exchange Complaint, *S.E.C. v. Petters*, No. 09-cv-01750-ADM-JSM (D. Minn. July 8, 2009)—is easily dismissed.  "Federal Rule of Evidence 703 authorizes an expert to testify to an opinion she formed even if she based that opinion on otherwise inadmissible facts or data, which at times may include out-of-court testimonial statements."  *U.S. v. Pablo,* 625 F.3d 1285, 1292 (10th Cir. 2010).  In any event, it is clear that Mr. McIntosh's understanding of the Petters fraud was based on a number of documents, not just the S.E.C. complaint.  *See* McIntosh Rpt. at 3 (stating that his understanding of fraud based on "review of various documents and data disks, including Lancelot's Confidential Memoranda and the complaint" filed by S.E.C.).

## CONCLUSION

Accordingly, for the reasons stated above, Charter One's Motion in Limine should be denied.

Dated:  March 26, 2012                Respectfully submitted,


                                      _____/s/_____
                                      Steven W. Thomas
                                      THOMAS, ALEXANDER & FORRESTER LLP
                                      14 27th Avenue
                                      Venice, California 90291
                                      Telephone:    (310) 961-2536
                                      Facsimile:    (310) 526-6852

                                      Steven M. Feder
                                      FEDER LAW FIRM
                                      730 17th Street, Suite 550
                                      Denver, Colorado  80202
                                      Telephone:  (303) 261-8798
                                      Facsimile:  (303) 221-7357

                                      *Attorneys for Agile Safety Variable Fund, L.P. and Sky Bell Select L.P.*