IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:09-cv-02786- RBJ-BNB

Agile Safety Variable Fund, L.P. and Sky Bell
Select LP,

    Plaintiffs,

v.

RBS Citizens, N.A. d/b/a Charter One Bank, et
al.,

    Defendants.

PLAINTIFFS' OPPOSITION TO
RBS CITIZENS, N.A.'S MOTION IN LIMINE TO
EXCLUDE EVIDENCE OF AND TESTIMONY REGARDING
CHARTER ONE'S POLICIES, PROCEDURES, AND FIELD EXAMS

Plaintiffs Agile Safety Variable Fund, L.P. and Sky Bell Select LP (collectively, "Plaintiffs") here oppose Defendant RBS Citizens, N.A.'s ("Defendant" or "Charter One") motion in limine to exclude evidence of, references to, and testimony regarding Charter One's policies, procedures and field exams ("Motion"). Because it raises issues identical to those raised by *another* motion in limine filed by Charter One—that one to exclude the testimony of Plaintiffs' expert—Plaintiffs request that argument relating to that motion be incorporated here.

## INTRODUCTION

Charter One's Motion depends on a description of Plaintiffs' state-law claims that is contrary to the claims themselves, as specifically recognized and described by this Court on summary judgment. Charter One would excise from the case that its own field examiners repeatedly warned Charter One to do asset-based due diligence to verify that the transactions at issue were real, as well as Charter One's senior management *rejection* of their own field examiner's advice. But this is part of the core evidence that proves both that Charter One's statements were false—Charter One told Plaintiffs it *was* doing asset based due diligence—and proves that Charter One either negligently or intentionally made the misstatement to Plaintiffs.

In fact, in the two paragraphs this Court used to summarize Plaintiffs' claims in denying summary judgment as to all three of Plaintiffs' claims, the second paragraph specifically discussed the very evidence Charter One now seeks to exclude:

> Charter One recruited Lancelot by promising to decrease the administrative burden and oversight of Lancelot as compared to its previous lender. In decreasing the oversight, Plaintiffs allege, Charter One failed to follow up on warnings from field examiners who repeatedly warned Charter One's senior management to verify whether the underlying transactions were real.

Dkt. 215 (Opinion and Order on Motions to Dismiss and for Summary Judgment) (the "SJ Order") at 3.

In addition, Charter One ignores that proof of its failure to follow its own policies and procedures proves a necessary element of each of Plaintiffs' claims. Plaintiffs must prove that Charter One acted below the standard of care (negligence), that Charter One "failed to exercise reasonable care or competence in supplying the information," SJ Order at 16, or that Charter One acted with "the requisite scienter," which includes recklessness. *Id.* at 18. Charter One's failure to follow its own procedures tends to prove each of these elements. For example, Charter One's own procedures said it was supposed to check the shipping documents to confirm whether the inventory was real, but Charter One violated its procedures and did not so verify. Moreover, all of the cash for all the fake transactions flowed through Charter One, and Charter One saw that the payment for the transactions was coming from a Petters entity rather than from a retailer, like Costco. *See* Dkt. 299 (Thomas Declaration In Support of Motion in Limine) Exh. B (Defs.' Trial Exh. B53). This should have been a red flag, but Charter One did nothing.

These violations of Charter One's own procedures demonstrate that Charter One "failed to exercise reasonable care or competence in supplying the information" to Plaintiffs, violated the standard of care, and acted recklessly. Such relevant evidence cannot be excluded under the law. *See, e.g., Therrien v. Target Corp.*, 617 F.3d 1242, 1256 (10th Cir. 2010); *Clayton Brokerage Co. of St. Louis, Inc.* 737 P.2d 1106, 1110 (Colo. 1987).

## BACKGROUND

Plaintiffs have three state law claims that this Court has held present issues of fact for trial: negligence, negligent misrepresentation and securities fraud. Plaintiffs' claims are that Charter One and Swiss Financial Services, Inc. ("Swiss Financial") (collectively "Defendants") failed to do their jobs, and then lied to Plaintiffs about it. Plaintiffs' losses were proximately caused by Defendants' failure to do their job because Plaintiffs invested, reinvested and retained

2

their investments as a result of Defendants' negligent misrepresentations and violations of Colorado securities laws.

**Plaintiffs**.  Plaintiffs are investment funds.  Individuals invest in Plaintiffs who in turn invest that money in other funds.  Plaintiff Agile Variable no longer operates and investors now run Agile Variable.  Those investors are Colorado retirees, many of whom lost their retirement savings.  Plaintiff Sky Bell also no longer operates.  The principal who still manages Sky Bell, who also is an investor, is Gary Marks.

**Plaintiffs' investments in this case**.  Plaintiffs invested in, among other things, Lancelot Investors Fund, L.P. and Lancelot Investors Fund II, L.P. (collectively, "Lancelot").  Lancelot purported to be a fund that provided short term financing to transactions brokered by Thomas Petters, which purported to sell excess electronic inventory at a discount to large wholesale retailers, such as Costco.  In fact, the transactions were fake, although the money—including the money invested by Plaintiffs—was real.  Lancelot had significant real estate holdings and Petters owned, at various times, Polaroid Corporation.

**Defendants**.  Defendants are Charter One, a subsidiary of The Royal Bank of Scotland, and Swiss Financial, a division of Swiss Financial Services Holding AG.

**Defendant Charter One's Role in the Transactions**.  All the real money invested in Lancelot for what turned out to be fake transactions flowed through accounts at defendant Charter One bank, because Charter One demanded that all of Lancelot's accounts be at Charter One.  As a result, Lancelot was one of Charter One's biggest clients.  Dkt. 299, Exh. A (Plaintiffs' Trial Exh. 126 Excerpts) at 215.

Charter One failed to do its job in several, significant ways.  That the transactions were fake was demonstrated by the money movement in the Lancelot bank accounts that Charter One

oversaw—Charter One knew that money for the transactions was supposed to be wired directly from Costco, but no such wires ever occurred. *Id.* Exh. B (Defendants' Trial Exh. B53). Instead Charter One repeatedly accepted wires from the fraudsters, entities related to Thomas Petters. *Id*. Charter One either did not look or ignored the evidence as it continued to collect millions of dollars in fees from one of its largest banking clients. *Id.* Exh. A at 216, 219, 247-249. As Charter One admitted after the fraud was discovered, there were "textbook warning signs" that should have been red flags to Charter One that the transactions were fake. *Id.* at 250. Charter One further failed to follow its own policies and procedures which would have caused it to discover the fraud.

In addition, Charter One's own bank examiners repeatedly warned their superiors at Charter One to verify that the transactions were real, but those warnings were overruled by senior management. Specifically, Charter One examiners advised it was necessary to check the collateral and shipping documents to be sure the electronic goods were actually shipped to Costco and other big box retailers. *Id.* Exhs. C (Plaintiffs' Trial Exhibit 10); D (Plaintiffs' Trial Exhibit 11); E (Plaintiffs' Trial Exhibit 12); and F (Plaintiffs' Trial Exhibit 13). Although Charter One's normal policy was to do so, senior management at Charter One refused, explaining that Charter One obtained Lancelot's business by promising to be less burdensome than Lancelot's prior bank. *Id.* Exh. D at 1. Charter One's own bank examiners knew this violated Charter One's procedures, and in each subsequent examination report wrote ***in bold and italics*** that Charter One should check the shipping documents, but senior management at Charter One always declined. *Id.* Exh. D at 3; Exh. E at 5; Exh. F at 4-5. Because the transactions were fake and no electronics had in fact ever been shipped, if Charter One had done its job, the fraud would have been revealed.

4

**Defendant Charter One's Misrepresentations to Plaintiffs**. Charter One compounded its gross negligence by lying about it to Plaintiffs. Despite Charter One's conscious, repeated rejection of its own employees' written recommendation—in bold and italics—to do asset-based due diligence and verify shipping documents, Charter One told Plaintiffs it *was doing* "asset-based" due diligence. *Id.* Exh. G (Plaintiffs' Trial Exhibit 597). This was a direct misrepresentation to Plaintiffs, constituting at least a negligent misrepresentation and a violation of Colorado's securities laws. Charter One's comments were taken down in contemporaneous, written notes by Plaintiffs. *Id*.

Moreover, Charter One misrepresented that "[t]hey … tie it back to the books and records by following the cash through all the various accounts." *Id.* Exh. A at 133. Either this is a direct misrepresentation or confirms Charter One's gross negligence—*all* the money was running through Lancelot's accounts at Charter One and thus if Charter One was monitoring the accounts the way it told Plaintiffs it was, the red flag of *no wires* from Costco to pay for the electronic goods would have been discovered immediately and the fraud and Plaintiffs' losses prevented.

## ARGUMENT

I. **CHARTER ONE'S LENDING POLICIS, PROCEDURES, AND FIELD EXAMS ARE RELEVANT TO PLAINTIFFS' CLAIMS.**

   A. **Legal Standard.**

The Federal Rules provide that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "As for the degree of probative value required under Rule 401, the rule sets the bar very low." *U.S. v. McVeigh*, 153 F.3d 1166, 1190 (10th Cir. 1998).

5

### B.      Charter One's Guidelines, Policies and Procedures Are Relevant.

The Tenth Circuit and the Colorado Supreme Court both hold that whether a party adhered to its own internal policies or industry standards is relevant to showing negligence or intent. *See, e.g., Therrien v. Target Corp.*, 617 F.3d 1242, 1256 (10th Cir. 2010) (company's internal policies admissible to show negligence); *Clayton Brokerage Co. of St. Louis, Inc.* 737 P.2d 1106, 1111-12 (Colo. 1987) (court properly considered brokerage firm's compliance manual as "relevant to [defendant brokerage firm's] negligent handling of an investor's funds"). *See also, Owner-Operator Independent Drivers Ass'n, Inc. v. USIS Commercial Services, Inc.,* 537 F.3d 1184, 1193 (10th Cir. 2008) (evidence of industry practice properly admitted as relevant to question of defendant's willfulness in failing to comply with statutory requirements); *Cook v. Rockwell Intern. Corp.*, 580 F.Supp.2d 1071, 1177 (D. Colo. 2006) (defendant's compliance with regulatory standards relevant to showing negligence).

In *Therrien*, a store customer brought a negligence action against Target Corporation for injuries sustained when he was stabbed by a suspected shoplifter. At trial, the court allowed plaintiff to introduce evidence of Target's security policies, including recommended procedures for apprehending shoplifters, and to introduce evidence that Target's employees did not conform to those procedures. 617 F.3d at 1256. The Tenth Circuit held that admission of the policies was proper because "[a]lthough a company's internal policies 'do not alter the applicable standard of care, they are admissible to show negligence,' even if the policies demand a higher standard of care than the applicable law." *Id.* (quoting *Robinson v. Mo. Pac. R.R. Co.,* 16 F.3d 1083, 1091 (10th Cir. 1994)). As the Tenth Circuit recognized, such policies do not set the legal standard, but "are evidence of the measure of causation which ought to be exercised in situations to which the rules apply." *Therrien*, 617 F.3d at 1256. Here, as in *Therrien*, evidence of Charter One's policies and procedures relating to making and servicing loans are relevant to the measure of

6

Case 1:09-cv-02786-RBJ-BNB   Document 303   Filed 03/26/12   USDC Colorado   Page 8 of 12

care it should have exercised in connection with its loans to Lancelot.[1]

Indeed, numerous courts have recognized that a "plaintiff arguing that a member of a particular trade or profession behaved negligently in carrying out his duties may appropriately use as evidence of negligence manuals, regulations, or other materials defining the reasonable and expected standards of professional practice within that occupation," *Brown v. National Football League,* 219 F. Supp.2d 372, 384 (S.D.N.Y. 2002), and have found such industry standards and internal policies admissible in cases such as this. *See, e.g., Hesse v. Halpert and Co. Employee Profit Sharing Trust,* 1998 WL 111678, at *12 (N.D. Ill. Mar. 12, 1998) (commodity futures merchant's own guidelines and procedures to support plaintiff's claim that merchant was negligent in supervising and handling plaintiff's investments); *Abrams & Wofsy v. Renaissance Inv. Corp.*, 820 F. Supp. 1519, 1539 (N.D. Ga. 1993) (considering whether accounting firm followed its own internal guidelines when determining whether firm breached its duty of care); *Mishkin v. Peat, Marwick, Mitchell & Co.,* 744 F. Supp. 531, 538 (S.D.N.Y. 1990) (accounting firm's deviation from its own in-house auditing principles may be evidence of negligence).

Charter One relies on *Tanberg v. Sholtis*, 401 F.3d 1151, 1163-64 (10th Cir. 2005), but the Tenth Circuit in *Tanberg* recognized that police regulations do not bear on whether an officer violated the Fourth Amendment, so the regulations were irrelevant to the plaintiff's claim. Here, to the contrary, the Tenth Circuit has held that company policies are relevant in negligence claims such as this one. *Tanberg* has no bearing here.

---

[1] As discussed below, to the extent Charter One argues that its negligence in connection with Lancelot does not bear on Plaintiffs' claims, this assertion ignores that Charter One's misrepresentations pertained to its review of Lancelot, and that Charter One would not have made the positive misrepresentations had it not been negligent in its review.


      C.    **Evidence Concerning Charter One's Approvals, Due Diligence and Field Exams of the Lancelot Loans Are Relevant.**

Similarly unavailing is Charter One's attempt to exclude evidence pertaining to its approvals of and due diligence leading up to the Lancelot loans, as well as the field exams it purported to conduct on Lancelot. As explained above, Charter One made misrepresentations about the kind of due diligence and field exams it was performing on Lancelot. Accordingly, what kind of due diligence review Charter One *actually* performed—as opposed to what it *represented* it performed—is obviously relevant to establishing Charter One's misrepresentations and Plaintiffs' claims of negligent misrepresentation and violation of the Colorado securities laws.

For example, despite Charter One's conscious, repeated rejection of its own employees' written recommendation—in bold and italics—to do asset-based due diligence and verify shipping documents, Charter One told Plaintiffs it *was doing* "asset-based" due diligence. Dkt. 299, Exh. G (Plaintiffs' Trial Exhibit 597). Moreover, Charter One misrepresented that "[t]hey … tie it back to the books and records by following the cash through all the various accounts." *Id.* Exh. A at 133. Yet, if Charter One was monitoring the accounts the way it told Plaintiffs it was, the red flag of *no wires* from Costco to pay for the electronic goods would have been discovered, and Plaintiffs' losses prevented.

Charter One's failure to exercise care in connection with the Lancelot accounts—and the direct misrepresentations concerning or resulting from that failure—form the basis of Plaintiffs' claims and are therefore relevant. *See, e.g., Central Bank Denver, N.A. v. Mehaffy, Rider, Windholz & Wilson,* 865 P.2d 862, 864 (Colo. App. 1993) *aff'd* 892 P.2d 230 (Colo. 1995) (negligent misrepresentation claim stated under Colorado law based on defendants' failure "to exercise reasonable care in obtaining, reviewing, analyzing, and communicating with the Bank

8

regarding the investments"); *Suez Equity Investors, L.P. v. Toronto-Dominion Bank,* 250 F.3d 87, 103 (2d Cir. 2001) (negligent misrepresentation claim under New York law when "defendants repeatedly assured plaintiffs that they had performed extensive due diligence…and they explicitly represented that only positive information on the Group's principal had been uncovered"); *Schwarz v. ThinkStrategy Capital Management LLC,* 797 F. Supp.2d 439, 445 (S.D.N.Y. 2011) (in negligent misrepresentation case where the factual dispute was "whether defendants actually conducted due diligence in the manner they represented to plaintiffs," court noted that "[t]he issue here is not what the defendants knew about the… fraud but what they knew about their own due diligence process when they made allegedly false representations to plaintiffs to invest").

## II.     EVIDENCE OF CHARTER ONE'S LENDING POLICIES, PROCEDURES, AND FIELD EXAMS SHOULD NOT BE EXCLUDED UNDER RULE 403.

Indeed, given that this evidence establishes whether misrepresentations were made, and whether Charter One acted with negligence or scienter in making them, it is difficult to see how their probative value could be outweighed—let alone "substantially outweighed"—by a danger of unfair prejudice or jury confusion.  The Tenth Circuit has counseled that "[e]vidence is not unfairly prejudicial…simply because it is damaging to an opponent's case."  *Therrien*, 617 F.3d at 1256 (quoting *U.S. v. Caraway*, 534 F.3d 1290, 1301 (10th Cir 2008).  "To be *unfairly* prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"  *Id.* (quoting Fed. R. Evid. 403 advisory committee's note) (emphasis in original).  *See K-B Trucking Co. v. Riss Intern. Corp.*, 763 F.2d 1148, 1156 (10th Cir. 1985) ("The exclusion of relevant evidence under Rule 403 is 'an extraordinary remedy to be used sparingly.'") (citations omitted).

Here, there is nothing improper about the jury considering Charter One's policies—and

its failure to adhere to those policies—in connection with its approval, due diligence and field exams of the Lancelot loans. It is an element of Plaintiffs' claims and permissible under the law. *See, e.g., Therrien* 617 F.3d at 1256 (10th Cir. 2010) (company's internal policies admissible to show negligence); *Clayton Brokerage Co. of St. Louis, Inc*. 737 P.2d 1106, 1110 (Colo. 1987). Far from causing jury confusion, the evidence goes directly to issues that the jury must decide: whether Charter One was negligent, whether Charter one negligently misrepresented the review it performed on Lancelot, and whether Charter One acted with scienter when it made positive affirmations about Lancelot.

Charter One again relies on *Tanberg v. Sholit*, 401 F.3d at 1164 (10th Cir. 2005), but *Tanberg* did not involve negligence or scienter, and the court found that the evidence to be excluded in *Tanberg* had "minimal probative value." Here, the evidence Charter One seeks to exclude is highly relevant to Plaintiffs' claims—indeed, proves the falsity of the very statements that are the basis of Plaintiffs' claims. Moreover, the court in *Tanberg* found a "likelihood that the jury could confuse legal and administrative standards," such as those set forth in the police department procedures. In negligence cases, however, the Tenth Circuit has recognized that the risk of such jury confusion can be addressed through a jury instruction that a company's policies do not alter the standard of care but are admissible to show negligence. *See Therrien*, 617 F.3d at 1256.

## CONCLUSION

Accordingly, for the reasons stated above, Charter One's Motion in Limine should be denied.

Dated:  March 26, 2012                     Respectfully submitted,

                                    /s/
                            Steven W. Thomas
                            Emily Alexander
                            THOMAS ALEXANDER & FORRESTER LLP
                            14 27th Avenue
                            Venice, California 90291
                            Telephone:   (310) 961-2536
                            Facsimile:    (310) 526-6852

                            Steven M. Feder
                            FEDER LAW FIRM
                            730 17th Street, Suite 550
                            Denver, Colorado  80202
                            Telephone:   (303) 261-8798
                            Facsimile:    (303) 221-7357

                            *Attorneys for Agile Safety Variable Fund, L.P. and Sky Bell Select L.P.*